509 F.2d 784
 1975-1 Trade Cases 60,208
 WOODS EXPLORATION & PRODUCING COMPANY, INC., et al.,
Plaintiffs-Appellees,
v.
ALUMINUM COMPANY OF AMERICA et al., Defendants-Appellants.
WOODS EXPLORATION & PRODUCING COMPANY, INC., et al., Plaintiffs,
Southeastern Pipeline Company, Plaintiff-Appellee-Cross Appellant,
v.
ALUMINUM COMPANY OF AMERICA et al.,
Defendants-Appellants-Cross Appellees.
 Nos. 72--2792, 73--1633.
 United States Court of Appeals,
Fifth Circuit.
 March 13, 1975.
Rehearing and Rehearing En Banc
Denied April 24, 1975.
 
 Ross N. Sterling, Leroy Jeffers, Charles T. Newton, Jr., David T. Hedges, Jr., Houston, Tex., for defendants-appellants.
 Herman Wright, Arthur J. Mandell, Levert J. Able, Houston, Tex., for plaintiffs-appellees.
 Appeals from the United States District Court for the Southern District of Texas.
 Before COLEMAN, AINSWORTH and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 We review in these consolidated appeals the proceedings occurring below in this matter since its former appearance here. The facts have been amply stated in our prior opinion, Woods Exploration Co. v. Aluminum Co. of America, 5 Cir., 1971, 438 F.2d 1286, cert. denied, 1972, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 and those of the district court, W.D.Tex.1968, 284 F.Supp. 582, and W.D.Tex.1969, 304 F.Supp. 845. We will repeat only so much of the background history of the case as is necessary to dispose of the current appeals.
 
 
 2
 By our opinion at 438 F.2d 1286 we disposed of the issues before us on the prior appeal in the following manner:
 
 
 3
 (i) We reversed the district court's entry of judgment n.o.v. in favor of the defendants, Aluminum Company of America, and others, (hereinafter usually Alcoa) as to charges by the plaintiffs-appellants there, appellees-cross-appellants here, Woods Exploration & Producing Company, Inc., and others, (hereinafter usually Woods) that Alcoa conspired to monopolize, attempted to monopolize, or monopolized the mining and transportation of natural gas from the Appling Field in Jackson and Calhoun Counties, Texas, and directed that the jury verdict in favor of Woods on this issue (the monopolization issue) be reinstated;
 
 
 4
 (ii) We reversed the district court's entry of partial summary judgment for Alcoa on the claim of Woods that Alcoa filed false nomination forecasts with the Texas Railroad Commission in an effort to limit Woods' production of natural gas from the Appling Field and remanded that issue (the false nominations issue) for trial;
 
 
 5
 (iii) We vacated the district court's injunction prohibiting Woods from pursuing identical litigation in the state courts of Texas pending resolution of the false nominations issue on remand; and
 
 
 6
 (iv) We reversed the trial court's exclusion of the issue of damages flowing from Alcoa's alleged interference with Woods' plan for construction of a liquid extraction plant in conjunction with Lumar Gas Pipe Line Company (hereinafter Lumar) and remanded for retrial only on the issue of damages flowing from the interference with the proposed extraction plant (the extraction plant issue).
 
 
 7
 On remand, Woods explicitly abandoned the false nominations claim, and the district court as to this issue entered a partial dismissal with prejudice. The district court reinstated the jury verdict for Woods on the monopolization issue and entered partial final judgment in Woods' favor thereon pursuant to Rule 54(b), F.R.Civ.P. Finally, as we had directed, the trial court held a retrial limited to the issue of damages on the extraction plant issue. The retrial resulted in a jury verdict and award of damages in Woods' favor, and the district court entered final judgment thereon.
 
 
 8
 Defendants Alcoa and others now appeal from the partial final judgment entered against them on the monopolization issue and from the final judgment against them on the extraction plant issue. For clarity, we treat the two issues separately.
 
 I THE MONOPOLIZATION ISSUE
 
 9
 A. Partial Final Judgment Under Rule 54(b), F.R.Civ.P. Appellants argue that the district court improperly entered partial final judgment on the monopolization issue under Rule 54(b), F.R.Civ.P. because the suit below involved only one claim for relief, and partial judgment is barred under Rule 54(b). Appellees answer that the district court, in entering partial final judgment, did no more than follow the law of the case which we established in our prior opinion, 438 F.2d at 1316: 'As to (the monopolization issue) the trial court may, if it wishes, render a partial final judgment under Fed.R.Civ.P. 54.' Appellants respond that since the Rule 54(b) issue was not before this court on the prior appeal, our authorization of the entry of partial final judgment cannot be considered the 'law of the case' on this appeal.
 
 
 10
 We need not consider whether our earlier authorization of the entry of partial final judgment on the monopolization issue is the law of the case, nor need we decide the strict technical question whether the entry of such judgment was proper under the provisions of Rule 54(b), F.R.Civ.P. By our prior direction, the separate appeals from judgment on the monopolization issue and from judgment on the extraction plant issue were consolidated for purposes of oral argument and decision by the court. This consolidation served the underlying purpose of Rule 54(b), which is to prevent prejudice to the parties and unnecessary cost to the public by piecemeal appellate consideration of issues so intimately intertwined as to constitute but one claim. Wright & Miller, Federal Practice and Procedure: Civil § 2654, p. 54 (1973). Remand on this procedural point would be no more than an empty gesture in which we decline to indulge. We affirm the district court's entry of partial final judgment on the reinstated jury verdict in favor of the plaintiffs on the monopolization issue.
 
 
 11
 B. Exclusion of Production Evidence. Alcoa strenuously urges that exclusion from the jury of evidence from two Texas Supreme Court decisions, Railroad Comm'n v. Aluminum Company of America, Tex.1964, 380 S.W.2d 599 and Railroad Comm'n v. Woods Exploration and Producing Co., Tex.1966, 405 S.W.2d 313, cert. denied sub nom. Aluminum Co. of America v. Woods Exploration, Inc., 1966, 385 U.S. 991, 87 S.Ct. 602, 17 L.Ed.2d 450 deprived Alcoa of the benefit of evidence from which the jury could have concluded that Alcoa and its associated appellants were incapable of monopolizing or dominating production and transmission of natural gas from the Appling Field. The evidence sought to be introduced was, in sum, that Alcoa's ownership of approximately 90% of the surface land area in the Appling Field, because of the 1/3--2/3 proration formula and the limited productive capacity of Alcoa's large tract wells, did not necessarily support a conclusion that the defendants had the power to 'control prices or exclude competition.' United States v. E. I. DuPont de Nemours & Co., 1956, 351 U.S. 377, 391--92, 76 S.Ct. 994, 1005, 100 L.Ed. 1264, 1278--79. Alcoa argues that such power is necessary as a prerequisite to a finding of a violation of § 2 of the Sherman Act, Title 15 U.S.C. § 2.
 
 
 12
 As pointed out by Woods, we need not consider this point further. It was fully examined and was disposed of by this court on the prior appeal in our ruling on the issue of whether the judgment n.o.v. was properly granted. We then expressed the view:
 
 
 13
 (W)e hold that the Appling Field clearly constitutes the relevant geographic market, and that the jury could find that defendants possessed sufficient power in that market to monopolize the production of natural gas. 438 F.2d at 1304.
 
 We stated further:
 
 14
 Viewing the Appling Field as the relevant market, we think the jury was warranted in finding that defendants possessed monopoly power in that Field. Defendants contend first that the evidence demonstrates that plaintiffs in fact were able eventually to produce their production quota so that defendants' lack of monopoly power is apparent. We disagree. While plaintiffs did eventually manage to produce their production quota, they incurred both increased expenditures and lost production due to defendants' conduct. More important, we do not think that absolute success in excluding competition is an essential element to proving monopoly power under section 2. It is enough that defendants' market position is such that they have substantial power to thwart competition. The defendants here and their alleged co-conspirators owned or leased approximately 90% of the Appling Field. Their holdings were so situated that they could block transportation from competing wells. We think that the jury could find on this state of the facts that defendants possessed monopoly power in the Appling Field within the meaning of the Act. (Emphasis added) 438 F.2d at 1307.
 
 
 15
 This language demonstrates that Alcoa's claim is foreclosed by our prior opinion, which is binding on this panel. Cf. Gulf Coast Building & Supply Co., Inc. v. I.B.E.W., 5 Cir. 1972, 460 F.2d 105, 107.
 
 
 16
 C. The Admission of Pipeline Construction Cost Figures. Alcoa asserts that the trial court improperly allowed the jury to consider the $99,100 cost to Woods' subsidiary, Southeastern Pipeline Co., to build a gas pipeline to transport gas out of the Appling Field. This undertaking of construction was occasioned by a refusal of Lavaca, an Alcoa subsidiary, to deal with Southeastern and by the refusal of Lumar to accept Woods' gas for transmission in its pipeline. Alcoa urges that the initial cost of $99,100 for the pipeline was more than offset by profits in excess of $235,000 which Southeastern netted for transporting Woods' gas for the years 1961--64. Alcoa concludes by asserting that damages and not costs are the essence of a section 2 violation and that Woods and Southeastern, far from being damaged by having to construct their own pipeline, actually profited from the venture.
 
 
 17
 Here again, we find our prior opinion to be dispositive. We stated there that we found the jury computation of damages flowing to Southeastern:
 
 
 18
 clearly supported by the evidence, consisting of (1) the cost of pipe which had been purchased by Southeastern to connect Woods' wells to Lumar's line, and which could not be used since Lumar refused to deal; (2) the unnecessary expense incurred by Southeastern in building a second pipeline running alongside the Lumar line; and (3) the loss by Southeastern of the sale of 16,000 m.c.f. of gas per day occasioned by six weeks' loss of gas production due to Lumar's illegally-inspired refusal to deal.
 
 
 19
 438 F.2d at 1309.
 
 
 20
 This issue is no longer open upon this appeal. Gulf Coast Building & Supply Co., Inc. v. I.B.E.W., supra.
 
 
 21
 D. Sufficiency of the Evidence. The Alcoa appellants next contend that the jury verdict finding that Alcoa prevented Wolcott (of Lumar) from signing a pipeline agreement with Woods is against the weight of the evidence and that a new trial is demanded on this crucial issue. The gist of Woods' argument on this issue at trial concerned a clause in Lumar's right-of-way agreement which required Lumar to obtain the permission of Mr. F. E. Appling[1] before transporting a specific producer's gas through the Lumar pipeline. Woods contended, and the jury found, that Alcoa and its codefendant, Crown Central Petroleum Company (Crown) caused Appling to inform Wolcott that Lumar could not transport Woods' gas through the Lumar pipeline. The appellants complain that their motion for a new trial on sufficiency grounds filed after the entry of partial final judgment on remand was erroneously denied by the trial court on grounds that this court had found the evidence sufficient to support the jury verdict. Alcoa complains that the trial court, based upon this assertedly erroneous assumption regarding our holding on the prior appeal, failed to discharge its duty to weigh the evidence independently in ruling on the new trial motion.
 
 
 22
 The Woods group counters that the Alcoa appellants, by failing to file a motion for new trial either (a) in the alternative at the time they filed their motion for judgment n.o.v. or (b) as a protective measure within 10 days after the entry of judgment n.o.v. in their favor, waived the right to question the admissibility or weight of the evidence. The Woods group asserts that Alcoa's new trial motion was not filed timely under Rule 50(c)(1), F.R.Civ.P. and that hence Alcoa is precluded from raising the sufficiency issue on appeal. The appellees further urge that even assuming arguendo that the motion was timely filed, the record of the proceedings after remand clearly demonstrates that the trial court carefully weighed the evidence and found it supportive of the jury verdict.
 
 
 23
 We perceive the appellees' last-mentioned point to be well taken, and therefore we pretermit deciding whether Alcoa's motion for new trial was timely under Rule 50(c)(1), F.R.Civ.P. The record on appeal indicates that the trial court upon remand denied Alcoa's new trial motion only after carefully weighing the evidence. The trial judge stated in colloquy with Alcoa's counsel:
 
 
 24
 But no one has pointed out to me the grievous error that the jury made, that there wasn't any preponderance of evidence favorable to it.
 
 
 25
 I have (the two volumes of testimony from the trial) in my chambers back there and have read them two or three times. I couldn't see why anything that was said in those statements, or that evidence, would require me to find that the jury--the preponderance of the evidence was the other way at all.
 
 
 26
 So if your reversal is based on propositions that I did not pass on that, you are in error because I did pass on that. And I thought, as did the Court of Appeals, that there was sufficient evidence to sustain the verdict. (App. 820--21, Appeal No. 72--2792).
 
 
 27
 We cannot say that this ruling constituted an abuse of discretion on the part of the trial judge, and we affirm the denial of the new trial motion alleging insufficiency of the evidence.[2]
 
 
 28
 E. Computation of Interest. Alcoa's last contention regarding the monopolization issue is that the trial court erroneously allowed interest on damages from October 10, 1969, the date of entry of the judgment n.o.v. in defendants' favor, urging that the proper accrual date should instead be June 25, 1972, the date that partial summary judgment was entered in favor of the plaintiffs on remand from this court. The established rule is that computation of interest be made from the date judgment should properly have been entered for the plaintiffs. We affirm as to this issue. Cf. Louisiana and Arkansas Ry. Co. v. Pratt, 5 Cir. 1944, 142 F.2d 847, 849.
 
 II THE EXTRACTION PLANT ISSUE
 
 29
 A. Exclusion of the Monopolization Issue. The Alcoa appellants argue that the trial court improperly excluded from the jury evidence as to the issue of antitrust liability on the trial of the extraction plant damages issue on remand. They claim that plaintiffs' lawsuit was treated as one cause of action for some purposes and as several causes of action for other purposes, and assert that a retrial on all issues is the only fair way to accomplish complete justice in this suit. Woods counters that the only issue before the trial court on remand was the damages issue, specifically whether Woods' subsidiary and co-appellee, Southeastern Pipeline Company, Inc. (Southeastern) 'had the intention and the preparedness to construct an extraction plant;' and if so, the dollar amount of damages flowing from Alcoa's interference with the construction of that plant.
 
 
 30
 Support for appellees' position exists both in logic and in the law of the case as established in our prior opinion. First, we cannot agree that the extraction plant issue was so wholly separate as to require resubmission of the antitrust liability question to the jury on remand. The jury had found in the first trial that Alcoa and others had conspired 'to monopolize (an) appreciable part of the trade and commerce of drilling for, producing, and transporting gas from the Appling Field.' (Emphasis added) This issue was disposed of when partial final judgment was entered after remand from the prior appeal.
 
 
 31
 It is clear that the building of the proposed extraction plant would have been incidental to the consummation of the pipeline agreement. Hence, the only monopolization issue was related to frustration of the pipeline agreement. Remaining for consideration by the jury on remand were only the questions: (a) whether Southeastern had the intent and preparedness to build the extraction plant jointly with Lumar and (b) whether Southeastern was damaged by frustration of the plans to build the plant, the frustration flowing from Alcoa and Crown's interference with the pipeline agreement. In the first trial, these questions had been withdrawn from the jury's consideration by the trial judge. The trial court recognized this when it stated in its unpublished memorandum opinion:
 
 
 32
 It seems plain that the contemplated joint extraction plant venture hinged on the arrangement permitting Southeastern to transport its gas through Lumar's pipeline. In the previous trial the jury imposed antitrust liability on defendants for preventing the consummation of the pipeline agreement between Lumar and Southeastern. In this factual context the argument that the monopolization found to exist by the first jury is so unrelated to the extraction plant claim as not to provide any basis for such claim must be rejected. Plaintiff Southeastern has won its case by convincing the jury that defendants interfered with an extraction plant agreement, that this injury was to Southeastern's business and property, and that the injury was proximately caused by the defendants' monopolization of the trade or commerce or transporting, drilling for and producing gas as established by the prior jury verdict. (App. at 123, Appeal No. 73--1633)
 
 
 33
 We agree. The issue on remand was properly limited to the issue of damages flowing from the Alcoa appellants' alleged interference with the construction of the liquids extraction plant through their concerted activity.
 
 
 34
 In this connection, it was not error to instruct the jury as to the verdict reached by the first jury in the original trial of case on the monopolization issue. It was necessary for the jury in the second trial to be informed of the outcome of the prior litigation, since the resolution of the issue before it presumed the earlier findings. The claim that such instruction was error is without merit.
 
 
 35
 B. Exclusion of Expert Testimony. Alcoa next argues that it was error to exclude testimony of its handwriting expert to the effect that Wolcott's signature on the proposed pipeline contract between Southeastern and Lumar was not genuine. Inspection of the record discloses that the jury was adequately apprised that the signature on the pipeline agreement was not Wolcott's by the reading of the verdict of the jury in the original trial. By answer to Question Number 4 of that verdict, the prior jury found specifically that Wolcott had not signed the proposed agreement.
 
 
 36
 C. Jury Instruction 32. Alcoa contends that the giving of Southeastern's Requested Instruction No. 32 to the jury was error under Rule 49, F.R.Civ.P. since it related to no issue submitted to the jury under the special verdict procedure invoked in this case. The instruction objected to was as follows:
 
 
 37
 32. You are instructed that under the antitrust laws individual action taken by defendants before the Railroad Commission of Texas and in the courts cannot be considered as evidence against them . . . A person individually is privileged under the United States Constitution to take any and all such actions. You are instructed, however, that persons, including corporations, may not combine for the purpose of using governmental agencies and the courts as a means to harass and deter competitors in furtherance of their monopoly. Acts which are in themselves legal lose their character when they become constituent elements of an unlawful scheme. (App. p. 95, No. 73--1633)
 
 
 38
 Contrary to this contention, we view Requested Instruction 32 as clearly related to the question of Southeastern's preparedness to go forward with construction of the proposed extraction plant. One of Alcoa's theories at trial was that the extraction plant was not economically feasable at the time its construction was proposed, because, at that time, Alcoa and others were challenging in Texas courts the legality of the 1/3--2/3 proration formula and the Railroad Commission ruling allowing multiple completions on Woods' small town-lot wells. In the face of this litigation, Alcoa argued, Southeastern would have been unable to secure financing for construction of the proposed extraction plant.
 
 
 39
 Requested Instruction No. 32, therefore, informed the jury that the legal challenges to the 1/3--2/3 formula and the multiple completions allowances might be viewed as part of the overall conspiracy. If the jury took this view, then the economic impossibility of obtaining financing would be traceable to the monopolization effort, and Alcoa would still be liable for damages. In this perspective, the instruction was not improper. Appellants' other contentions regarding the giving of Requested Instruction No. 32 are without substance.
 
 
 40
 D. The Sufficiency of the Evidence. Alcoa next contends that the jury's critical findings (i) that Southeastern had the intent and preparedness to go forward with the proposed extraction plant and (ii) that Alcoa and its co-defendants by their actions frustrated Southeastern's plans are against the great weight and preponderance of the evidence. The sufficiency of the evidence issue was squarely before the district court on Alcoa's motion for new trial. The district court, in denying that motion, stated:
 
 
 41
 The claim of insufficient evidence has no substance. The evidence was strong--though conflicting--that the plaintiffs were ready, willing and able to participate in the extraction plant project. The Court gave the defendants wide latitude in trying to convince the jury that the allowables were not sufficient to run an extraction plant profitably; that plaintiffs could not secure the money necessary to go through with the project because of lawsuits attacking the 1/3--2/3 rule as well as their financial status; and that plaintiffs' testimony, especially Woods', was not credible on the second trial because their testimony at the first trial that Fred Wolcott's signature on the proposed pipeline contract was genuine was impeached by the first jury's verdict. Still the jury decided against the defendants on all of these issues. App. pp. 135--36, No. 73--1633.
 
 
 42
 The established standard under our decisions for review of the denial of a new trial motion alleging insufficiency of the evidence is whether the trial court has clearly erred in denying the motion, the principle being referred to in most of our cases as 'abuse of discretion'. United Broadcasting Co. v. Armes, 5 Cir. 1975, 506 F.2d 766; Faircloth v. LambGrays Harbor Co., Inc., 5 Cir. 1972, 467 F.2d 685, 697; Powell v. McIntire, 5 Cir. 1969, 415 F.2d 333. Careful study of the record in this case reveals no violation of the governing standard by the trial court. We discern no error in its ruling.[3]
 
 
 43
 E. Damages. Alcoa argues that Southeastern's hypothetical profits from the proposed extraction plant planned with Lumar were too speculative to form a sound basis for a jury computation of damages. Our review of the record discloses that Southeastern introduced competent evidence relating to its probable profits from the proposed extraction plant.[4] While some questions were raised as to the mathematical precision with which these future profits could be determined, this in itself will not suffice to exclude such calculations from the jury's consideration. As we stated in Lehrman v. Gulf Oil Corp., 5 Cir. 1972, 464 F.2d 26, 45, cert. denied 409 U.S. 1077, 93 S.Ct. 687, 34 L.Ed.2d 665:[5]
 
 
 44
 (22, 23) Gulf also protests the 'speculative' testimony of Ernest Brown and urges us to hold this testimony an inadequate basis for assessing Lehrman's damages. But Gulf merely protests application of the familiar rule that a wrongdoer is responsible for uncertainty in calculating the damages proximately caused by his own wrongdoing. * * * Once it is apparent that damages must be assessed so as to approximate the future profits of a business, a court and jury necessarily enter into the realm of the imprecise and the uncertain. Particularly is the calculation of damages difficult when the future profits of an enterprise as young as Lehrman's must be determined, since there is no reliable track record to look back on. But uncertainty cannot end the efforts of the federal courts to redress the harm caused proprietors by violations of the freedom of the marketplace. The wrongdoer must bear the risk of the uncertainty in measuring the harm he causes. Bigelow v. RKO Radio Pictures, Inc., 1946, 327 U.S. 251, 265, 66 S.Ct. 574, 90 L.Ed. 652; Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 566, 51 S.Ct. 248, 75 L.Ed. 544.
 
 
 45
 The basis for the damage award in the instant case was not impermissibly imprecise, under the teachings of Lehrman and the cases there cited. Alcoa's argument in this regard is rejected.
 
 
 46
 F. Woods' Cross Appeal as to Damages. Woods asserts that the jury was improperly instructed[6] to deduct from its award the amount that appellees would have had to pay as corporate income taxes on amounts constituting lost income from the proposed extraction plant. But Woods further urges that the judgment be affirmed if reformation of the jury verdict in this respect would require a remand for re-computation of damages by yet another jury. The separate components included by the jury in reaching its money award of $352,223.04 are not now ascertainable. We conclude that correction of the verdict would require such re-submission assuming arguendo its incorrectness as it now stands. See New Orleans and Northeastern R.R. Co. v. Hewett Oil Co., 5 Cir. 1965, 341 F.2d 406, 410. Accordingly, we pretermit discussion of whether the jury should or should not have been instructed to reduce its award by deduction of an estimated amount of corporate income taxes thereon, and affirm as to the cross appeal.
 
 
 47
 The judgments appealed from are in all respects
 
 
 48
 Affirmed.
 
 
 
 [1]
 Appling owned certain lands in Jackson and Calhoun Counties over which Lumar had obtained easements to construct its pipeline. See the district court opinion at 304 F.Supp. 848--49
 
 
 [2]
 See infra, pages 791, 792 of text, subsection D. Sufficiency of the Evidence, and Note 3 thereto, (under Part II commencing page 789, The Extraction Plant Issue) for a discussion of the Fifth Circuit 'abuse of discretion' standards governing review of the denial of motions for new trial alleging insufficiency of the evidence
 
 
 [3]
 For a discussion of the policies underlying the scope of appellate review of orders denying or granting new trial motions and of the distinctions between the two, see, for example, Massey v. Gulf Oil Corp., 5 Cir. 1975, 508 F.2d 92 (1975); Taylor v. Washington Terminal Co., 1969, 133 U.S.App.D.C. 110, 409 F.2d 145, 147--49, cert. denied 1969, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85; Lind v. Schenley Industries, Inc., 3 Cir. 1960, 278 F.2d 79, 88--90 (en banc), cert. denied 1960, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60. As Judge Godbold pointed out in Massey; supra:
 (T)he operative factors underlying review of a ruling on a new trial motion are deference to the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record, deference to the jury's determination of weight of the evidence and quantum of damages, and the constitutional allocation to juries of questions of fact. We noted (in Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033, 5 Cir. 1970) that where the judge denies the motion and leaves undisturbed the jury's determination, all factors press in the direction of leaving the trial judge's ruling undisturbed. But where the judge has granted a new trial, the factors oppose each other. Deference to the trial judge is subjected to opposing tensions of deference to the jury as the body to whom fact finding is constitutionally allocated and deference to the decision which the jury has reached pursuant to that authority. Furthermore, where a new trial is granted on the ground that the verdict is against the weight of the evidence, we exercise closer scrutiny than where the ground is that some undesirable or pernicious influence has intruded into the trial, because to an extent the judge has substituted his judgment of the facts and credibility of witnesses for that of the jury. Thereby we protect the litigants' right to jury trial. 508 F.2d page 94.
 So it is in the instant case.
 
 
 [4]
 This evidence included, inter alia, (i) figures representing the amount of gas which would have flowed through the extraction plant from the time of its beginning operation in September 1961 until the time suit was filed in January 1966; (ii) the quantity of liquids which would have been present in the gas and available for extraction; (iii) the amount of liquids which would have actually been extracted by the proposed plant; (iv) the selling price of the liquids over the relevant period; less (v) the cost of transporting the liquids to market and (vi) the cost of building and operating the plant. Evidence was also introduced based upon the operation of an extraction plant which was actually built on the Lumar pipeline
 
 
 [5]
 Our opinion on the second appeal in Lehrman, from the proceedings following remand appears at 500 F.2d 659 (5 Cir. 1974). The discussion there, part IV, pages 667--670 of 500 F.2d, of damages arising from antitrust violations, is helpful and generally supportive of our holding in this case
 
 
 [6]
 By the trial court's giving of Alcoa's Requested Instruction No. 29:
 
 
 [29]
 If you reach and consider the issue of damages submitted to you, you are instructed in connection therewith that under the law the amount of actual damages sustained by plaintiff, if any, by reason of any violation of the antitrust laws would not be subject to federal income tax. Plaintiff Southeastern Pipeline Company bases its claim of damage on the amount of net profit before federal income taxes which it claims it would have made if it had participated with Lumar Gas Corporation in the construction and operation of a gasoline extraction plant on the Lumar line. Any such net profit would have been subject to federal income taxes. Therefore, the amount of federal income taxes should be deducted from the figure of net profits before income taxes arrived at by you in determining any actual damages sustained by plaintiff Southeastern Pipeline Company