**AFFILIATED CAPITAL CORP.,**
**Plaintiff-Appellant,**

v.

**CITY OF HOUSTON, et al.,**
**Defendants,**

**Gulf Coast Cable Television and James J. McConn, Defendants-Appellees.**

No. 81–2335.

United States Court of Appeals,
Fifth Circuit.

July 9, 1986.

Patrick E. Higginbotham, Circuit Judge, specially concurred and filed opinion.

Brown, Circuit Judge, filed dissenting opinion in which Jerre S. Williams, Circuit Judge, joined.

Alvin B. Rubin, Circuit Judge, filed dissenting opinion in which Brown, Johnson, and Jerre S. Williams, circuit judges, joined.

William H. White, Stephen D. Susman, Charles J. Brink, Houston, Tex., Michael M. Barron, Austin, Tex., for plaintiff-appellant.

Rufus Wallingford, Layne E. Kruse, Houston, Tex., for City of Houston, & Jim McConn.

John L. Jeffers, Richard B. Miller, Theodore F. Weiss, Jr., Houston, Tex., for Gulf Coast Cable Television.

Before CLARK, Chief Judge, BROWN *, GEE, RUBIN, GARZA **, REAVLEY, POLITZ, JOHNSON, WILLIAMS, JOLLY, HIGGINBOTHAM, and DAVIS, Circuit Judges.***

---

\* Judge Brown, now a Senior Judge, participated in the original en banc opinion.

\*\* Judge Garza, a Senior Judge of this court, is participating as a member of the original panel.

\*\*\* Judge Tate, a participant in the original en banc opinion, died on March 27, 1986. Before his death, Judge Tate indicated that he would have joined in Judge Rubin's dissent. Judges Randall and Garwood did not participate in this

## ON MOTION FOR ALLOWANCE OF INTEREST ON JUDGMENT

GARZA, Circuit Judge:

In our previously released opinion in this case, 735 F.2d 1555 (5th Cir.1984) (en banc) *cert. denied,* —— U.S. ——, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986), we reversed the district court's grant of judgment n.o.v. in favor of defendants with instructions to reinstate the jury verdict and to grant the plaintiff, Affiliated Capital Corporation, ("Affiliated"), judgment against Gulf Coast Cable Television ("Gulf Coast") only.[1] No mandate was issued due to Gulf Coast's petition to the Supreme Court for writ of certiorari. Following the Supreme Court's denial of certiorari on January 13, 1986, this court issued a mandate on January 29, 1986. Our mandate, however, contained no instructions regarding the date upon which interest should attach. Affiliated now moves this court to direct that the judgment in this case bear interest from the date on which the district court erroneously entered judgment for Gulf Coast.[2]

Rule 37, of the Federal Rules of Appellate Procedure, provides:

> Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the district court. If a judgment is modified or reversed with a direction that a judgment for money be entered in district court,

the mandate shall contain instructions with respect to allowance of interest. Affiliated contends that the second sentence of Rule 37 governs this case, and that it is entitled to receive post-judgment interest from the day on which the district court erroneously entered judgment for Gulf Coast under our decisions in *Louisiana and Arkansas Ry. Co. v. Pratt,* 142 F.2d 847 (5th Cir.1944); *Givens v. Missouri-Kansas-Texas Ry. Co.,* 196 F.2d 905 (5th Cir.1952); and *Maxey v. Freightliner Corp.,* 727 F.2d 350 (5th Cir.1984).

Because our previous opinion resulted in a reversal of the district court's judgment, we agree that the second sentence of Rule 37 applies. Moreover, we acknowledge that the authorities cited by Affiliated indicate that it is entitled to post-judgment interest from at least the date of the district court's erroneous judgment n.o.v. for Gulf Coast. Recent decisions in the Eighth and Ninth Circuits also support Affiliated's claim. *See Buck v. Burton,* 768 F.2d 285 (8th Cir.1985); *Turner v. Japan Lines Ltd.,* 702 F.2d 752 (9th Cir.1983).

Affiliated's motion, in effect, asks us to announce a rule which heretofore may have appeared implicit in the case law of our circuit. However, we hesitate to announce a "hard and fast" rule which would require us, in every case where this court reverses a judgment n.o.v. for a defendant, to direct that interest run from a date other than the date judgment is entered on appellate remand. A review of this still unsettled area of the law leads us to conclude that such a

---

decision. Judges Hill and Jones were not on the court when this case was heard en banc.

1. The city of Houston and its mayor were also defendants in the original lawsuit. *Affiliated Capital Corp., et al., v. City of Houston, et al.,* 519 F.Supp. 991 (S.D.Tex.1981). The city of Houston was voluntarily dismissed by Affiliated on June 23, 1982. In our previous ruling we found that the mayor was entitled to qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See Affiliated Capital,* 735 F.2d at 1568–70, and Discussion, Part III, *infra.*

2. In *Briggs v. Pennsylvania R. Co.,* 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), the Supreme Court held that, where a court of appeals had remanded a case with directions to enter judg-

ment for a plaintiff, the district court could not exact interest from the date of the first judgment unless so ordered by the mandate of the court of appeals. Consistent with the result in *Briggs* and F.R.A.P. 37, "this court has held that where interest is simply overlooked, a party who conceives himself to be entitled to interest from a date other than judgment on remand should seek reformation of this court's mandate in a petition for rehearing. One who fails to seek such a reformation may not later complain that the district court should have calculated interest from an earlier date." *Gele v. Wilson,* 616 F.2d 146, 149 (5th Cir.1980) (citations omitted). *Accord* F.R.A.P. 37, Notes of Advisory Committee on Appellate Rules (West 1985).

rule need not, and should not, be formulated.

## I

In *Pratt* the plaintiff brought an action under the Federal Employers' Liability Act ("F.E.L.A."), 45 U.S.C. §§ 51 *et seq.*, for personal injuries sustained in the course of his employment for a railroad. The district court entered a judgment n.o.v. for the defendant following a jury verdict of $5,000. This court reversed and remanded with instructions that judgment be entered upon the verdict. *Pratt v. Louisiana & Arkansas Ry. Co.*, 135 F.2d 692 (5th Cir. 1943). The district court subsequently entered judgment in accordance with Louisiana law, which provided that legal interest attach from the date of judicial demand, and the defendant-railroad appealed.

■ We held that, although the F.E.L.A. was silent with respect to interest, the statute could not be construed to allow interest prior to verdict.[3] *Pratt*, 142 F.2d at 849. Turning to the predecessor statute of 28 U.S.C. § 1961 (hereinafter, § 1961), we noted that the Supreme Court, in *National Bank of the Commonwealth v. Mechanics National Bank*, 94 U.S. 437, 4 Otto 437, 24 L.Ed. 176 (1876), had equitably construed the statute so as to allow interest to run from the date of the verdict, where, without fault of the plaintiff, an appreciable time had elapsed between the rendition of the verdict and the entry of judgment. *Id.* Thus, we held that an award of interest bearing from the date of verdict was within the "equity" of the federal interest statute.[4] *Id.*

It must be observed that our holding in *Pratt* was based entirely on the "equitable construction" accorded to § 1961.[5] Rule 37, enacted subsequently, may also be given an equitable construction. Rule 37 requires that interest be payable from the date judgment is entered in the district court, where such judgment is affirmed on appeal. Logic, as well as equity, dictate this result.

■ However, Rule 37 neither requires nor prohibits that interest be payable from the date judgment is entered in the district court, where such judgment is "modified or reversed." The rule merely directs the courts of appeals to instruct the district court "with respect to allowance of interest." *See* 16 Wright, Miller, Cooper & Gressman, FEDERAL PRACTICE AND PROCEDURE § 3983 (1977). We conclude that the equitable construction accorded to § 1961 in *Pratt*, like Rule 37, neither re-

---

**3.** We noted, however, that "[t]he item of accrued interest presents a question of substantive law." *Pratt*, 142 F.2d at 848. It follows that, under the rule of *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity must apply the substantive law of the state regarding the rate and accrual of interest on a judgment. *See Klaxon v. Stentor*, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *See e.g., New Amsterdam Casualty Co. v. Soileau*, 167 F.2d 767, 772 (5th Cir.), *cert. denied*, 335 U.S. 822, 69 S.Ct. 45, 93 L.Ed. 376 (1948) (applying Louisiana rule on accrual of interest from the date of judicial demand, where the jurisdiction of the court was founded on the diversity of the parties).

**4.** We also found support for an equitable construction in Fed.R.Civ.P. 58, which provides that, unless the court otherwise directs, judgment upon the verdict of a jury shall be entered forthwith by the clerk. *Pratt*, 142 F.2d at 849.

**5.** The author of *Pratt*, Judge Holmes, stated that state law ought to be the basis of interest awards where not in conflict with federal law. Speaking individually, Judge Holmes also said that because the F.E.L.A. precluded interest only before the date of verdict, Louisiana law should have been the basis of Pratt's interest award after verdict. *Pratt*, 142 F.2d at 849–51.

Judge Holmes' conclusion is not without support. In *Massachusetts Benefit Assn. v. Miles*, 137 U.S. 689, 691, 11 S.Ct. 234, 34 L.Ed. 834 (1891) the Supreme Court held that the federal interest statute, "while providing only for interest upon judgments, does not exclude the idea of a power in the several States to allow interest upon verdicts, and, where such allowance is expressly made by State statute, we consider it a right given to a successful plaintiff ... The courts of the State and the Federal Courts sitting within the State should be in harmony upon this point." After *Erie*, the Supreme Court quoted *Miles* with approval and stressed that the allowance of interest on verdicts should be the same in state and federal courts in diversity cases. *See Klaxon*, 313 U.S. at 497.

quires nor prohibits that interest be payable from the date judgment is entered in the district court—or any other fixed date—in every case where a judgment is modified or reversed on appeal. Any other result would emasculate the very meaning of "equity."

## II

This court has applied the ruling of *Pratt* to award interest from a date other than the date of judgment on appellate remand. *See e.g., Givens v. Missouri-Kansas-Texas Ry. Co.*, 196 F.2d 905, 906 (5th Cir.1952) (ordering that interest accrue from the date the district court entered its erroneous judgment); *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033, 1048 (5th Cir.1970), *cert. denied*, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972) (ordering that interest accrue from the date of the jury's verdict); *Maxey v. Freightliner*, 727 F.2d 350, 351 (5th Cir.1984) (modifying judgment and conditioning order that interest accrue from the date of the district court's erroneous judgment n.o.v. on acceptance of remittitur). The Eighth and Ninth Circuits have followed suit. *See e.g., Buck v. Burton*, 768 F.2d 285, 287 (8th Cir.1985) (plaintiff is entitled to post-judgment interest running from "the date upon which plaintiff's original judgment should have been entered had the district court not erroneously granted judgment n.o.v."); *Turner v. Japan Lines, Ltd.*, 702 F.2d 752, 755 (9th Cir.1983) ("The date of the verdict—not the date of entry of the judgment for plaintiff after reversal of the judgment n.o.v. on appeal—has been held [in *Pratt*] to be the controlling date"). The Second Circuit has rejected this view. *See e.g., Powers v. New York Central Railroad,*

251 F.2d 813, 818 (2d Cir.1958) ("The Fifth Circuit has read [§ 1961] as permitting the allowance of interest from a date earlier than the entry of judgment on mandate of the court of appeals ... However, in this circuit the law is otherwise").

In adopting our ruling in *Pratt*, the Ninth Circuit has stated that

[t]he purpose of awarding interest to a party recovering a money judgment is, of course, to compensate the wronged person for being deprived of the monetary value of the loss from the time of the loss to the payment of the money judgment.... Where judgment is entered promptly on the verdict, section 1961 ensures that the plaintiff is ... compensated for being deprived of the monetary value of the loss from the date of ascertainment of damages until payment by defendant.

*Turner*, 702 F.2d at 756.[6] *Accord, Buck*, 768 F.2d at 286–87.

■ We accept the *Turner* court's analysis that the purpose of awarding post-judgment interest is to compensate the "wronged plaintiff" for the loss of the use of a money judgment. The equitable construction accorded to § 1961 in *Pratt* encompasses this concept. The Second Circuit, by narrowly construing § 1961 to prohibit accrual of interest from a date other than date of judgment on appellate remand, fails to take into account actual loss to the plaintiff. But, as discussed earlier, we conclude that the equity within § 1961 and Rule 37 does not require a court of appeals to direct that interest run from a fixed date, such as the date of the jury's verdict. Such a "rule" ignores the fact that the "equities" vary from case to case.[7]

---

**6.** The Ninth Circuit concluded in a footnote that:

[i]n light of the policy underlying the awarding of interest in the judicial process and in view of the fact that a verdict or decision on a damages issue ordinarily takes into account interest only from time of loss up to the time of verdict and not beyond, we believe that the plaintiff is entitled to interest under section 1961 from the date of verdict to date of payment, even where judgment on the verdict is not entered "forthwith" as required by Rule

58. Any other approach would require the wronged plaintiff—and not the defendant—to bear the cost of the loss of the use of a money judgment from the date of verdict until the date of entry of the judgment.
*Turner*, 702 F.2d at 756–57, n. 5.

**7.** The *Turner* court appears to adopt a rule of equitable construction that would require a court of appeals to direct that interest accrue from the date of the verdict in every case. Such a construction, however, would require an ap-

## III

■ Keeping in mind the equitable construction accorded to § 1961 and F.R.A.P. 37, and that an essential purpose of such construction is to compensate a wronged plaintiff, we turn to the case at bar.

Affiliated filed suit against Gulf Coast and the city and mayor of Houston, claiming that the defendants had engaged in a conspiracy to allocate territories within the city among various applicants for cable television franchises, including Gulf Coast, in violation of the antitrust laws.[8] 15 U.S.C. § 1 *et seq.* Affiliated recovered a jury verdict of 2.1 million dollars. The district court eventually entered a judgment n.o.v. for all defendants on August 10, 1981.

A divided panel of this court reversed. *Affiliated Capital Corp. v. City of Houston, et al.*, 700 F.2d 226, *vacated*, 714 F.2d 25 (5th Cir.1983). In that opinion we applied a per se analysis to an agreement which essentially "cut up the pie," and which "served only to eliminate competition from other applicants such as Affiliated." *Affiliated Capital*, 700 F.2d at 236. *Cf. United States v. Topco Associates, Inc.*, 405 U.S. 596, 608, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972) ("One of the classic examples of a per se violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition"). We reinstated the full jury verdict against Gulf Coast and the mayor, noting that Affiliated had voluntarily dismissed the city of Houston.

Upon reconsideration by the full court, we once again reversed the district court's judgment n.o.v. for the defendants. *Affil-iated Capital Corp. v. City of Houston, et al.*, 735 F.2d 1555 (5th Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986). In our en banc opinion, however, we found it unnecessary to reach the issue of a per se violation. Instead, we held, under the standard of review of a judgment n.o.v. or directed verdict by a trial court announced in *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc), that there was sufficient evidence for the jury to infer that one or more of the defendants participated in a conspiracy in unreasonable restraint of trade to limit competition for cable television franchises, and that the conspiracy to exclude Affiliated and other such applicants resulted in Affiliated's failure to receive a franchise. *Affiliated Capital*, 735 F.2d at 1563–66.

Moreover, we held that the mayor was entitled to qualified immunity from Affiliated's suit because, at the time of his actions, he did not, as a matter of law, violate clearly established law. *Id.* at 1568–70. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

A summary of this long, drawn-out antitrust action amply demonstrates that Affiliated's victory was far from clear-cut: *first*, Affiliated voluntarily dismissed the city of Houston, a principal defendant in the original lawsuit; *second*, the mayor

---

pellate court to modify every judgment not entered on the date of verdict. This court has previously rejected such a view of § 1961. *See Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157, 1168 (5th Cir.1972) (a six-week delay between verdict and judgment was not unreasonable and did not warrant a departure from the language of § 1961, which provides that "interest shall be calculated from the date of the entry of the judgment").

Even if such a rule were limited to situations like *Pratt* and *Turner, i.e.,* where the appellate court reverses a judgment n.o.v. for a defendant, an anomalous result would follow: courts of appeals would be required, under Rule 37, to direct interest from the date judgment is entered, where a judgment is affirmed, but to direct interest from the date of verdict, where a judgment is altered on appeal. Yet from the standpoint of the "wronged plaintiff," "the result should not differ." *Turner*, 702 F.2d at 756.

8. The facts are set forth fully in our previous opinion, 735 F.2d at 1557–59.

was held to be protected under the principle of qualified immunity, even though his actions played a critical part in the over-all conspiracy agreement; *third*, judgment was eventually had against only one of the original defendants, Gulf Coast; *fourth*, this court's final opinion, reinstating that judgment, rested merely on the conclusion that the evidence was *sufficient* for the jury to infer that the agreement resulted in Affiliated's failure to receive a franchise. In view of the foregoing events, we conclude that the equities in the instant case dictate that Affiliated collect interest from the date of judgment on appellate remand, which in this case is January 29, 1986.

We would emphasize that our construction of the equities in this case does not force Affiliated to go uncompensated for the loss of value on its money judgment. Affiliated is entitled, as are all successful antitrust plaintiffs, to recover treble damages[9] from Gulf Coast. "Although the treble damage provision may be partially justifiable on compensatory grounds, its principal purpose is to deter antitrust violations. The prospect of a damage award multiplied three-fold should provide an incentive for private parties to instigate costly litigation, thus supplementing Governmental enforcement." *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir.1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975) (footnotes omitted). In short, Affiliated will collect 6.3 million dollars in damages plus interest from the date final judgment was entered. Because the 4.2 million dollars in treble damages exceeds Affiliated's actual losses, we are not in this case presented with the usual, uncompensated "wronged plaintiff" for which

the equitable construction and application of § 1961 and Rule 37 was intended.[10]

## CONCLUSION

In summary, we affirm the equitable construction accorded to § 1961 in *Pratt* and extend such construction to F.R.A.P. 37. We hold that Rule 37 and § 1961 neither require nor prohibit a court of appeals from directing that interest on a judgment be payable from a certain date where such judgment is altered on appeal. Moreover, we find that an essential purpose of awarding interest prior to judgment on appellate remand is to compensate a plaintiff for the loss of the use of a money judgment. We conclude that the equities in this case dictate that interest run from the date of judgment on appellate remand, and that such award does not force Affiliated to go uncompensated for actual losses.

Therefore, Affiliated's Motion for Allowance of Interest on Judgment from the date of the district court's erroneous judgment, August 10, 1981, is DENIED. Pursuant to F.R.A.P. 37, it is hereby ORDERED that the district court enter judgment for Affiliated on the original verdict with whatever interest is allowed by law to be payable from January 29, 1986.

IT IS SO ORDERED.

PATRICK E. HIGGINBOTHAM, Circuit Judge, specially concurring:

I concur in the judgment because I am persuaded that the plaintiff is not entitled to interest before entry of a judgment in its favor. But I am not persuaded that the language of 28 U.S.C. § 1961, which is

9. 15 U.S.C.A. § 15 (West Supp.1985) provides in part:
   (a) **Amount of recovery** ...
   ... any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ... without respect to the amount in controversy, and shall recover threefold the damages by him sustained....

10. We note that in another antitrust case, *Woods Exploration & Producing Co., Inc., et. al. v. Aluminum Company of America, (Alcoa), et al.*, 509

F.2d 784, 789 (5th Cir.) *cert. denied*, 423 U.S. 833 (1975), we directed that interest run from the date of the district court's erroneous judgment: "The established rule is that computation of interest be made from the date judgment should properly have been entered for the plaintiffs." Our decision in *Woods Exploration* is hereby overruled to the extent it conflicts with this opinion. Once again, the equitable construction accorded to § 1961 and Rule 37 neither requires nor prohibits that interest be payable from a particular date.

plain enough, allows us to do "equity." Interest is simply compensation for the loss of use of money. The Congress has said that interest "shall be calculated from the date of the entry of the judgment." Before that date, therefore, the plaintiff was not entitled to the money and is not entitled to be compensated for the loss of its use.

It is no answer to say that an "equitable" construction of the statute allows an award of interest running from the date when a judgment ought to have been entered. When we interpret indefinite language and are persuaded that the Congress intended to achieve a certain array of results, we may well have the authority to give full content to the congressional purpose and, in the process, call it "equitable." This court's reading of the statute and Fed.R.Civ.P. 37, however, simply claims the power to tack on interest whenever a majority of appellate judges think it fair to do so. We do not have the inherent authority to bestow gratuities on deserving plaintiffs, and I find nothing in the statute granting such a license. I would therefore follow the Second Circuit's rule and deny interest.

I joined in upholding plaintiff's verdict because I was persuaded that decisions of the Supreme Court required me to do so. If, however, we are to measure this claim for interest according to each judge's equitable lights, I agree that an award is not appropriate. I am persuaded that the antitrust regulation of economic markets will not, in the end, become a standard tool for regulating state government. The answers for raw political deals are political, and the Sherman Act cannot be used to furnish those answers for long. In my view, this defendant was defeated on the merits because it passed through a time window of changing law rather than because it engaged in conduct that was malevolent by antitrust standards. There would be no equity in forcing it to pay a bonus to the plaintiff on top of the lawful award.

JOHN R. BROWN, Circuit Judge, with whom Judge WILLIAMS joins, dissenting:

I concur in Judge Rubin's dissent that *Woods Exploration & Producing Co. Inc.*
*v. Alcoa* is the "established rule" of this Circuit and should not now be ingloriously overruled or watered down. Furthermore, even if the question is to be determined on a case-by-case basis, a consideration of the equities compels the allowance of post-judgment interest from the date on which judgment should have been entered by the District Court. To state it conversely: the equities in this case do not call for postponement of the calculation of interest until the Supreme Court's denial of certiorari.

First, it is this en banc Court which made the error precipitating this problem. Under F.R.A.P. 37, in ordering reversal with obvious remand for money judgment, the Rule requires that our "mandate" shall contain instructions with respect to allowance of interest. Although I am the first to recognize that issuance of the mandate is essentially ministerial by the Clerk so that no judge was responsible for this mistake, the error was nevertheless ours. However it happened, this is hardly an equity against the ultimate victor.

There are, however, many equities favoring the ultimate victor. But for the erroneous ruling of the District Court, the plaintiff would have had the use of the money awarded by the jury's verdict. And, the defendant would *not* have. Since assessment of interest reflects both the loss of use of money and an element of damages, it is hard to imagine a more equitable result in this case than to follow the lead of *Woods*. The "equity" done by the majority penalizes the victorious plaintiff for the District Court's error, and gives the defendant a windfall. Application of *Woods* puts both parties in the position in which they would already be but for the District Court's error.

The Court, under the guise of "equity" denies interest essentially because the case was close. Considering the functions of interest, it hardly seems significant, in equity or otherwise, that the case was close, involved difficult issues, or engendered a vigorous dissent. Moreover, I think it is

unwise and shortsighted to set a precedent establishing different qualitative levels of victory. A win, whether by four touchdowns or a last second field goal, is a win. Apparently the Court would have us distinguish between an appellate knockout and a split decision. How are we evenhandedly to apply this standard? Equity, flexible as it is, calls for evenhandedness in its application. Are we to deny interest anytime a member of the panel dissents? When an issue is worthy of en banc consideration? When there is a vigorous en banc dissent? I fear the Court has embarked upon a course replacing precedent grounded in equity with a vague standard incapable of practical application and unrelated to the functions of interest.

Finally, the Court's conclusion that Affiliated Capital was not a "wronged plaintiff" because of its recovery of treble damages totally misses the point. The concept of a wronged plaintiff arose in the Ninth Circuit case of *Turner v. Japan Lines, Ltd.*, 702 F.2d 752 (9th Cir.1983), which clearly describes a "wronged plaintiff" as a plaintiff who, though victorious, must bear the cost of loss of use of a money judgment due to an erroneous j.n.o.v. *Id.* at 756. As a result of today's decision, this is exactly the loss which must be borne by Affiliated Capital, a victorious plaintiff. Thus, not only is Affiliated Capital a "wronged plaintiff", but the Court has perpetrated and perpetuated the wrong in the name of "equity." I decline to concur in this inequitable use of equity.

ALVIN B. RUBIN, Circuit Judge, with whom BROWN, JOHNSON, and JERRE S. WILLIAMS, Circuit Judges, join, dissenting:

"The established rule," we said in *Woods Exploration & Producing Co., Inc. v. Aluminum Company of America, (Alcoa),*[1] "is that computation of interest be made from the date judgment should properly have been entered for the plaintiffs." The majority opinion correctly quotes this in footnote 10. Despite the reasons given by

the majority, I would not overrule that decision. I, therefore, respectfully dissent.

---

1. 509 F.2d 784, 789 (5th Cir). *cert. denied,* 423 U.S. 823 (1975).