NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1444

ERICSSON, INC. and
TELEFONAKTIEBOLAGET LM ERICSSON,

Plaintiffs-Appellees,

v.

HARRIS CORPORATION,

Defendant-Appellant,

and

INTERSIL CORPORATION,

Defendant-Appellant.

———————————————

DECIDED: August 5, 2005

———————————————

Before MICHEL, Chief Judge, LOURIE and PROST, Circuit Judges.

LOURIE, Circuit Judge.

Harris Corporation and Intersil Corporation (collectively, "Harris") appeal from the decision of the United States District Court for the Eastern District of Texas granting judgment of infringement of United States Patent 4,961,222 in favor of Ericsson, Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") and including

prejudgment interest in the award of damages. Ericsson, Inc. v. Harris Corp., No. 4:98-cv-325 (E.D. Tex. June 10, 2004) ("Ericsson III"). We affirm.

BACKGROUND

The '222 patent is entitled "Apparatus in a Telecommunication System for Supplying Power to a Telephone Set," and was issued to Hans V. Johansson and Arne O. T. Rydin as inventors. The patent specification discloses a subscriber line interface circuit ("SLIC") that acts as an interface between a telephone exchange and individual subscriber telephone sets. The invention seeks to reduce the idling power that is normally dissipated by amplifiers that transmit speech signals across the subscriber line. Specifically, the invention conserves power by switching from an active mode when the telephone set is in use ("off-hook") to a standby mode when the telephone set is not in use ("on-hook"). In the active mode, the larger speech signal amplifiers are capable of supplying power to the telephone set, whereas in the standby mode, the speech signal amplifiers are disabled, and instead the smaller auxiliary amplifiers supply power to the telephone set.

Claim 1, the only independent claim, provides, in pertinent part as follows:

> Apparatus in a telecommunications system for supplying power to a telephone set. . . . [W]hen the receiver of the telephone set is in its lifted-off position, the loop sensing circuit senses this position and sends a corresponding signal to the control circuit which, by control signals, enables the speech signal amplifiers and disables the auxiliary amplifiers, causing the auxiliary amplifiers to present an open circuit to said subscriber line, and in that when the receiver is in its cradled position, the loop sensing circuit senses this position and sends a corresponding signal to the control circuit which, by the control signals disables the speech signal amplifiers and enables the auxiliary amplifiers so that the speech signal amplifiers, which require power, only supply

04-1444 2

power to the telephone set when the receiver is off its cradle and a call can be made.

'222 Patent, col. 4, ll. 11-37 (emphases added).

In November 1998, Ericsson filed suit against Harris for infringement of claims 1 and 2 of the '222 patent. After trial, a jury found that Harris's accused devices did not literally infringe the '222 patent, but did infringe the claims under the doctrine of equivalents. Ericsson, Inc. v. Harris Corp., No. 4:98-cv-325 (E.D. Tex. July 11, 2002) ("Ericsson I"). The district court, however, granted Harris's motion for judgment as a matter of law ("JMOL") of noninfringement because it found that the accused devices did not meet the "only supply power" limitation, either literally or under the doctrine of equivalents. Id., slip op. at 21-22. Ericsson appealed the grant of JMOL of noninfringement in Ericsson I to this court. Ericsson, Inc. v. Harris Corp., 352 F.3d 1369 (Fed. Cir. 2003) ("Ericsson II").

In Ericsson II, we reversed the district court's grant of JMOL and reinstated the jury's verdict of infringement under the doctrine of equivalents.[1] Id. at 1375. Discussed at length in that appeal was whether the accused devices met the "only supply power" limitation of the '222 patent under the doctrine of equivalents. After Ericsson II was decided, Harris returned to the district court and renewed its motion for JMOL of noninfringement, arguing this time that its devices did not meet the "disables" limitation of the '222 patent. Understanding Ericsson II to have disposed of both the "disables" and "only supply power" limitations, however, the district court applied the mandate rule

---

[1]     Familiarity with our opinion in Ericsson II is presumed, and we repeat previously recited factual and procedural background only to the extent necessary to decide the pending appeal.

and denied Harris's renewed motion for JMOL of noninfringement. Ericsson III, slip op. at 2-3.

The district court entered final judgment of infringement on June 10, 2004. Harris timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I.     Mandate Rule

"[T]he interpretation by an appellate court of its own mandate is properly considered a question of law, reviewable de novo." Laitram Corp. v. NEC Corp., 115 F.3d 947, 950 (Fed. Cir. 1997). In applying the mandate rule, "[o]nly the issues actually decided—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." Engel Indus., Inc. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999) (citations omitted).

Assigning error to the district court's application of the mandate rule, Harris contends that we did not have authority in Ericsson II to decide whether the accused devices met the "disables" limitation, and thus any discussion of that limitation was dictum. According to Harris, the issue of infringement involving the "disables" limitation was "unripe" for appellate review because the district court never addressed that limitation on the merits. Appellees' Opposition Br., at 44. Harris also argues that even if the mandate rule was applicable, an exception to the rule applies here because our treatment of the "disables" limitation is "clearly erroneous and would work a manifest injustice." Id. at 49.

We disagree with Harris that the district court erred in applying the mandate rule or that we lacked authority to review the "disables" limitation. In Ericsson II, we

concluded that substantial evidence supported a reasonable jury's finding that the accused devices literally met the "disables" limitation. Ericsson II, 352 F.3d at 1374-75. First, we noted expert testimony explaining that the function of the QRA 23-25 transistors in the accused devices was to enable the speech signal amplifiers when the telephone receiver was off-hook and disable those amplifiers when the telephone receiver was on-hook. Id. at 1374. We also referred to a Harris engineer's notes labeling the QRA 23-25 transistors as "shut-off transistors." Id. Moreover, Harris's own data sheets described the speech signal amplifiers as "disabled" when the telephone receiver was on-hook. Id. The totality of this evidence, we determined, was sufficient to support a reasonable jury's findings that the QRA 23-25 transistors were not part of the speech signal amplifiers, and that the speech signal amplifiers were literally "disabled" when the telephone receiver was on-hook. Id. at 1374-75.

Moreover, our conclusion that the evidence supported a reasonable jury's finding that the accused devices literally met the "disables" limitation was within the scope of the Ericsson I JMOL since that conclusion was necessary for us to hold that the "only supply power" limitation was met under the doctrine of equivalents. The district court's finding that the accused devices did not meet the "only supply power" limitation was based on its faulty belief that the QRA 23-25 transistors were part of the speech signal amplifier, were not disabled when the telephone receiver was on-hook, and supplied power to the telephone set. Id. at 1372. Once we determined, however, that the QRA 23-25 transistors were not part of the speech signal amplifiers, and that the speech signal amplifiers were disabled when the telephone receiver was on-hook, it became necessary for us to redetermine whether the "only supply power" limitation was met

under the doctrine of equivalents. Indeed, only by first determining that the "disables" limitation was met literally could we then narrow the equivalence issue, as it related to the "only supply power" limitation, to "<u>when</u> the speech signal amplifiers supply power [during caller-ID functions], not <u>whether</u> they are 'enabled' or 'disabled.'" <u>Id.</u> at 1375.

In sum, our determination in <u>Ericsson II</u> that Harris's accused devices literally met the "disables" limitation was necessary to cause us to reverse the district court's grant of JMOL of noninfringement on the ground of the "only supply power" limitation. Thus, we affirm the district court's application of the mandate rule to deny Harris's renewed JMOL of noninfringement in <u>Ericsson III</u>.

Finally, application of the mandate rule with respect to the "disables" limitation would not result in "manifest injustice," as Harris asserts. On the contrary, the record reveals that Harris had an opportunity to argue that its devices did not meet the "disables" limitation, and it utilized it. For example, in its opening brief in <u>Ericsson II</u>, Ericsson argued that it presented sufficient evidence from which the jury could reasonably have found that the accused devices literally met the "disables" limitation. <u>Ericsson II</u> Appellants' Opening Br., at 52-54. In response, Harris challenged Ericsson's characterization of its supporting evidence, and argued that its devices did not meet the "disables" limitation because the speech signal amplifiers are not disabled when the telephone receiver is on-hook, the QRA 23-25 transistors are part of the speech signal amplifier, and the transistors supply power when the telephone receiver is on-hook. <u>Ericsson II</u> Cross-Appellants' Opening Br., at 36. The mere fact that Harris argued unsuccessfully in <u>Ericsson II</u> that its devices do not meet the "disables" limitation does not trigger the "manifest injustice" exception to the mandate rule.

04-1444                                     6

II.    Prejudgment Interest in the Damages Calculation

In the event that we affirm the district court's denial of Harris's renewed JMOL of noninfringement on the ground of the "disables" limitation, as we do, Harris argues that the court erred in allowing prejudgment interest to accrue after July 30, 2002, the date that judgment was entered in Ericsson I.  The determination of when prejudgment interest stops accruing and postjudgment interest begins accruing is governed by regional circuit law.  Transmatic, Inc. v. Gulton Indus., Inc., 180 F.3d 1343, 1347-48 (Fed. Cir. 1999).  The Fifth Circuit, the relevant regional circuit here, follows the Supreme Court's "meaningful ascertainment" test to determine when postjudgment interest begins to accrue.  Krieser v. Hobbs, 166 F.3d 736, 747 (5th Cir. 1999) (citing Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827 (1990)).  Moreover, 28 U.S.C. § 1961(a), which states that "interest shall be calculated from the date of entry of the judgment," is the governing statutory provision for determining when postjudgment interest begins to accrue.

Harris argues that the district court erred in allowing prejudgment interest to accrue through June 10, 2004, the date the court entered judgment on remand in Ericsson III.  According to Harris, the damages ultimately awarded by the district court on remand are identical to the damages awarded by the jury on June 3, 2001.  Thus, the damages award was meaningfully ascertainable when the court entered judgment pursuant to the jury verdict on July 30, 2002.

Applying both §1961(a) and the "meaningful ascertainment" test, we conclude, however, that the district court did not abuse its discretion in awarding prejudgment interest through June 10, 2004.  The damages awarded in Ericsson III were hardly

ascertainable from the judgment entered in Ericsson I. Indeed, the judgment in Ericsson I did not even contain any damages award because Harris was held not liable for infringement. Only when the district court entered the judgment on remand in Ericsson III did the damages award become meaningfully ascertainable.

Fifth Circuit case law, in Affiliated Capital Corp. v. City of Houston, 793 F.2d 706 (5th Cir. 1986), supports the district court's decision allowing postjudgment interest to begin accruing upon entry of the judgment on appellate remand. Analogous to the jury's verdict of infringement here, in Affiliated Capital, a jury rendered a verdict in favor of plaintiff on its antitrust claims. 793 F.2d at 708. The district court in Affiliated Capital, however, granted a judgment n.o.v. in favor of defendants. On appeal, the Fifth Circuit reversed the judgment n.o.v. and reinstated the jury verdict. Id. On plaintiff's motion for allowance of interest, the Fifth Circuit held that "the equities in the instant case dictate that [plaintiff] collect interest from the date of judgment on appellate remand." Id. at 712. Moreover, the Fifth Circuit refused to formulate a "hard and fast rule" as to when postjudgment interest begins to accrue when a judgment of no liability is subsequently reversed on appeal, leaving that determination for the district court. Id. at 708.[2]

In reaching its holding, the Affiliated Capital court limited two of the cases that Harris relies on in this case to their facts, namely, Louisiana and Arkansas Railway Co. v. Pratt, 142 F.2d 847 (5th Cir. 1944), and Maxey v. Freightliner Corp., 727 F.2d 350 (5th Cir. 1984), and it certainly did not interpret those cases to require postjudgment interest to run from the date of entry of an initial judgment that is later reversed, as Harris appears to advocate. 793 F.2d at 708-10. Moreover, the Affiliated Capital court

---

[2] We do not find the pronouncements on postjudgment interest in Affiliated Capital to be inconsistent with subsequent case law from the Fifth Circuit, e.g., Kreiser.

explicitly overruled another case that Harris relies on, <u>Woods Exploration and Producing Co. v. Aluminum Co. of America</u>, 509 F.2d 784 (5th Cir. 1975), to the extent that its analysis of when postjudgment interest accrues is inconsistent. <u>Id.</u> at 712 n.10.

<u>Federal Deposit Insurance Corp. v. Rocket Oil Co.</u>, 865 F.2d 1158 (10th Cir. 1989) ("<u>FDIC</u>"), which was cited with approval by the Supreme Court in <u>Kaiser</u>, 494 U.S. at 836, is also instructive and supports the district court's assessment of postjudgment interest. In <u>FDIC</u>, the Tenth Circuit affirmed the trial court's award of postjudgment interest which began to accrue from the date that judgment was entered on remand, as opposed to the date of the original judgment that the court vacated. 865 F.2d at 1159. In reaching its decision, the <u>FDIC</u> court relied on the same dispositive fact present here; the appellate court "completely reversed the district court's determination of liability and substantive rights of the parties changing the determinative judgment for purposes of postjudgment interest." <u>Id.</u> at 1161.

We have considered and are not persuaded by Harris's remaining arguments on appeal, including its request that we vacate the award of damages because the district court should not have awarded any prejudgment interest at all due to Ericsson's delay in bringing suit, or, in the alternative, that we lower the amount of prejudgment interest because the district court failed to account for the effect of taxes. Because Harris has not demonstrated that the district court abused its discretion in either respect, we affirm.