**CHEMICAL BANK & TRUST CO.**

v.

**PRUDENCE–BONDS CORP.**
(New Corp.) et al.

**No. 229, Docket 22971.**

United States Court of Appeals
Second Circuit.

Argued April 9, 1954.

Decided June 3, 1954.

Shearman & Sterling & Wright, New York City, for appellant; John A. Wilson, Lester Kissel and Willard M. L. Robinson, New York City, of counsel.

Charles M. McCarty, New York City, for appellee Prudence-Bonds Corp. (New Corp.).

George C. Wildermuth, Brooklyn, N. Y., for appellee successor trustee of debtor. Samuel Silbiger, Brooklyn, N. Y., for appellee George E. Eddy.

Nemerov & Shapiro, New York City, for appellee Rosalie Samson.

Koenig & Bachner, New York City, for appellees Gottlieb Trading Co. and others.

Before CHASE, Chief Judge, and SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This appeal is an aftermath of the prior decision of this court reported in Chemical Bank & Trust Company v. Prudence-Bonds Corporation (New Corporation), 2 Cir., 207 F.2d 67, certiorari denied 347 U.S. 904, 74 S.Ct. 429. The case involved an accounting by the Bank as successor trustee under a trust agreement securing the Fifteenth Series of bonds issued by the debtor corporation. Objections to the account were filed, some of which were sustained and others rejected by the District Court. Its decree, entered December 19, 1952, gave judgment against the Bank for $262,760.17, with interest thereon at 6% per annum from the date of the decree. Both the Bank and the Objectors appealed. On the Bank's appeal we affirmed; on the Objectors' we reversed, with directions to increase the surcharge by $902,750, with interest at 3% per annum on the several items making up such additional surcharge, and to require the Bank to pay all costs of the proceeding. A mandate, in the usual form, taxed appellate costs in favor of the Objectors in the sum of $1957.31, and directed that further proceedings be had "in accordance with the decision of this Court."[1] On October 23, 1953 a decree was entered on the mandate.[2] The present appeal brings up that decree, the Bank contending that it does not comply with the mandate in certain respects.

The decree now before us provides that Prudence-Bonds Corporation (New Corporation) recover from the Bank the following four sums: (1) $262,760.17 (the amount of the original judgment entered December 19, 1952); (2) $1,489,074.42 (the amount of the additional surcharge of $902,750, plus interest of $586,324.42, such interest being computed on the various items making up the additional surcharge at 3% per annum from their respective dates up to December 19, 1952); (3) $28,078.85 (being the increase in costs above those included in item (1) ). Each of these three items is to carry interest at 6% per annum from December 19, 1952. Item (4) is $1957.31 (the appellate costs as taxed in our mandate) and is to carry interest at 6% per annum from the date of the decree, October 23, 1953. The appellant contends that none of the above items should carry 6% interest before entry of the decree on mandate.

Since we affirmed the 1952 judgment in so far as it awarded recovery of $262,760.17, we think the decree on mandate is correct in applying the 6% judgment rate from December 19, 1952. This accords with 28 U.S.C.A. § 1961 and Rule 29(a) of the Rules of this court. As to the additional surcharges based on releases of cash, we stated that each should bear interest "at 3% from the date when it was made." We did not state when the interest period should end, but the implication is clear that it should continue until entry of the decree awarding recovery of the surcharges. We did not direct entry of judgment as of December 19, 1952. Until the decree on mandate was entered, the amount of the additional surcharge

1. Our opinion was filed August 20, 1953; the mandate was issued October 5, 1953 after denial of the Bank's petition for rehearing, and filed in the District Court October 7.

2. Timely notice of appeal was filed November 19, 1953. On December 30, 1953 the Bank filed a petition for certiorari to review the prior decision of this court. This was denied February 1, 1954, 347 U.S. 904, 74 S.Ct. 429. Thereafter on March 9, 1954 the Bank filed its brief and appendix.

and interest thereon was unliquidated, and no duty to pay the 6% judgment rate of interest thereon arose. The same is true as to additional costs. Accordingly imposition of the 6% rate on items (2) and (3) from and after December 19, 1952 was not in accordance with the mandate. As to those items that rate should begin on October 23, 1953.

The appellees request that if the court should be of opinion that it was necessary for its mandate to provide specifically for interest on the increased awards at the judgment rate of 6% from the date of the original judgment, that the mandate be recalled and so amended. This request is denied. The delay in the entry of the proper judgment was necessary in the sense that time for appellate reviews was required. See Briggs v. Pennsylvania R. Co., 2 Cir., 164 F.2d 21, 23, 1 A.L.R.2d 475, affirmed 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403. The decree on mandate in President and Directors of Manhattan Co. v. Kelby, 2 Cir., 147 F.2d 465, certiorari denied 324 U.S. 866, 65 S.Ct. 916, 89 L.Ed. 1422, is not a controlling precedent to the contrary, since the decree on mandate was never reviewed.

The judgment is modified and cause remanded for recomputation of interest in conformity with this opinion.

FRANK, Circuit Judge (dissenting).

On the former appeal, 2 Cir., 207 F.2d 67, we held that the district judge had erred in failing to find that the Bank owed substantially the amount previously determined by the Special Master, whose conclusions the judge had over-ruled in large part. In other words, we held that, had the judge not erred, his judgment, entered on December 19, 1952, would have been not merely for $262,-760.17 but for about a million dollars greater.

The judge, in arriving at his much smaller judgment of $262,760.17, had included interest at 3% up to the date of judgment (i. e., December 19, 1952). We said, 207 F.2d at page 77, that, as the Bank had been but negligent and not guilty of bad faith, we would not disturb the exaction of only 3% (instead of 6% as urged by the plaintiffs) to the date of judgment, since, in the circumstances, that was a matter within the judge's discretion. But I do not at all agree[1] with my colleagues that, in our ruling, "the implication is clear" that 3% only was to be the rate on the large amount by which we increased the sum due, from December 19, 1952 to the subsequent entry of the revised judgment pursuant to our mandate. True, we said nothing on that subject, for the very simple reason that we did not think about it. If we had, I have not the slightest doubt that we would then have said that, as the judge ought to have given judgment on December 19, 1952 for the much larger amount, interest on that figure should be at 6% from that date. For it is most unjust that, merely because the trial judge erred in over-ruling the Special Master, the plaintiffs, successors of bondholders who lost heavily on account of the Bank's negligence, should be deprived of the full 6% rate on more than $1,-500,000 for some ten months—from December 19, 1952 until October 23, 1953, when the new judgment on the mandate issued. (The plaintiffs did not, on the previous appeal, ask us to direct a judgment nunc pro tunc, doubtless because, in one of this series of cases, a suit by these plaintiffs against another bank, The Bank of Manhattan, where we reversed and remanded without such a direction, the same trial judge had entered judgment nunc pro tunc, with interest at 6%, and that bank had not appealed.)

I agree that, in the light of Briggs v. Pennsylvania R. Co., 2 Cir., 164 F.2d 21, 23, affirmed 334 U.S. 304, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403, our mandate did not authorize the judge to enter judgment on the mandate as he did. But in the Briggs case, both this court and the Supreme Court (1) stressed the fact that our term had expired when the second

1. I happened to be one of the panel of this court which heard and decided the earlier appeal.

appeal was taken, and (2) expressly refrained from deciding whether, even so, our mandate should have been amended if on the second appeal the plaintiff had requested the Court to amend it.[2] The Supreme Court, in the Briggs case, said: "It is clear that the interest was in excess of the terms of the mandate and hence was wrongly included in the District Court's judgment and rightly stricken out by the Circuit Court of Appeals. The latter court's mandate made no provision for such interest and the trial court had no power to enter judgment for an amount different than directed. If any enlargement of that amount were possible, it could be done only by amendment of the mandate. But *no move to do this was made during the term at which it went down. While power to act on its mandate after the term expires survives to protect the integrity of the court's own processes,* Hazel-Atlas Glass Co. v. Hartford Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250, *it has not been held to survive for the convenience of litigants.* Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168. The plaintiff has at no time moved to amend the mandate which is the basis of the judgment. That it made no provision for interest was apparent on its face. Plaintiff accepted its advantages and brings her case to this Court, not on the proposition that amendment of the mandate has been improperly refused, but on the ground that the mandate should be disregarded. Such a position cannot be sustained. *Hence the question whether interest might, on proper application, have been allowed, is not reached.*"[3]

Since our decision in the Briggs case (1947), Congress has abolished court terms and we are now entirely free to change our mandate to achieve justice. See 28 U.S.C. § 452, and National Comics Publication v. Fawcett Publications, 2 Cir., 198 F.2d 927. Moreover, here the plaintiffs specially request us to amend our mandate. My colleagues' decision

refusing to do so is, I think, in direct conflict with Givens v. Missouri-Kansas-Texas R. Co. of Texas, 5 Cir., 196 F.2d 905. I hope, therefore, that the Supreme Court will grant certiorari here.

---

2. See Givens v. Missouri-Kansas-Texas R. Co. of Texas, 5 Cir., 196 F.2d 905, 906.

