Wesley T. BAILEY, Plaintiff–Appellant,

v.

CHATTEM, INC., Defendant–Appellee.

No. 86–6188.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 2, 1987.

Decided Jan. 26, 1988.
Rehearing and Rehearing En Banc
Denied March 15, 1988.

Carlos C. Smith, Strange, Fletcher, Carriger, Walker, Hodge and Smith, Edward D. Meyer (argued), Chattanooga, Tenn., for plaintiff-appellant.

David Evans (argued), Gary Lander, Charles N. Jolly, Chattanooga, Tenn., for defendant-appellee.

Before MERRITT, KRUPANSKY and RYAN, Circuit Judges.

MERRITT, Circuit Judge.

This appeal concerning post-judgment interest under 28 U.S.C. § 1961 raises several esoteric issues. The principal question is whether interest should begin to run from the date of a district court judgment affirmed on appeal as to liability, but vacated and remanded for a new trial on damages, or only from the date of the second judgment. In the circumstances of this case, in which the more specifically instructed second jury awarded damages greater than those awarded in the first judgment, considerations of equity lead us to conclude that interest should run on the amount common to both district court judgments from the date of entry of the first judgment.

## I.

Petitioner-appellant Bailey sued Chattem, Inc., a Chattanooga manufacturer, in a diversity action for breach of contract and fraud arising from a controversy over the defendant's failure to commercialize and otherwise exploit a patented invention for improved paint developed by Bailey and assigned to Chattem. For further details, see *Bailey v. Chattem, Inc.*, 684 F.2d 386 (6th Cir.1982). By stipulation of the parties, the case was tried before the Magistrate. The jury awarded $548,000 in compensatory damages and $75,000 in punitive damages for promissory fraud, and $27,000 in compensatory damages for failure to commercialize Bailey's invention. The Magistrate on March 6, 1980 entered judgment in the total amount of $650,000. On October 27, 1980 the Magistrate amended the fraud judgment to $400,000 after conditioning denial of defendant's motion for new trial on plaintiff's acceptance of a $148,000 remittitur in the promissory fraud damages; the $75,000 punitive damages and $27,000 for failure to commercialize were left intact.

On appeal, a panel of this Court affirmed on liability and affirmed the $27,000 and $75,000 categories of damages. But the Court reversed the $400,000 in compensatory damages for fraud because, although it was "clear that Bailey was entitled to at least *some* compensatory damages, ... the trial court's instructions on damages were wholly inadequate to guide the jury in the complicated task of weighing [the] evidence to find the amount by which Bailey was defrauded." *Id.* at 394, 396–97 & n. 12 (emphasis in original).

On retrial, the jury awarded Bailey compensatory damages of $627,000 on the fraud claim. This judgment was entered by the Magistrate on August 5, 1983, and affirmed on appeal by this Court. *Bailey v. Chattem*, 779 F.2d 49 (6th Cir.1985), *cert. denied*, 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986).

On February 7, 1986 Bailey moved to amend the District Court's judgment upon remand to provide that interest on the $627,000 award should run not from August 5, 1983, the date of the judgment upon retrial, but from October 27, 1980.[1] The

---

1. Bailey did not seek to have the interest calculated from the original judgment date of March 6, 1980, although the parties had agreed that interest on the two categories of damages affirmed by this Court in its 1982 decision should run from this date rather than the later October

27, 1980 date of the amended judgment of the District Court. Amendment to Judgment on Mandate, Dec. 9, 1982, App. 55.

Because Bailey does not seek to invoke the March 6, 1980 date as the date from which interest on the $627,000 should run, we shall

Magistrate denied this motion, which forms the subject matter of this appeal.

## II.

A preliminary question is whether Bailey has preserved the issue of post-judgment interest for appeal. Chattem argues that Bailey either should have moved this Court pursuant to Fed.R.App.P. 37 to amend its mandate in 1985 to provide for the interest he seeks, or should have made a post-trial motion in the District Court to amend its August 5, 1983 judgment upon retrial. Because Bailey did neither, Chattem argues that Bailey is foreclosed from relief, citing as authority *Briggs v. Pennsylvania Railroad Co.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), and *Gele v. Wilson*, 616 F.2d 146 (5th Cir.1980).

*Briggs* and *Gele* held that a district court has no authority on remand to calculate post-judgment interest from a date earlier than its post-remand entry of judgment unless the mandate of the court of appeals so directs. We do not agree, however, that either *Briggs* or *Gele* controls *our* power to modify the application of interest to a judgment. *See Reaves v. Ole Man River Towing, Inc.*, 761 F.2d 1111 (5th Cir.1985) (distinguishing *Briggs* and *Gele*).

██ Bailey correctly notes that the August 3, 1982 mandate of this Court was appropriately silent on the subject of interest. That mandate did not order entry of a judgment for money damages but ordered a new trial. The issue of interest was not raised by the parties, and it is unreasonable to expect this court to deal with the interest issue in an opinion ordering a new trial.

The August 5, 1983 judgment of the District Court, which was affirmed by this Court in 1985, awarded Bailey $627,000 "with interest thereon at the rate provided by law." It is proper for the Magistrate to determine, upon affirmance, what interest was "provided by law," and it is proper for this Court to review that determination.

treat October 27, 1980 as the original date of entry of judgment and thus not reach the ques-

## III.

There are three issues that must be disposed of to resolve the appropriate application of post-judgment interest in this case. First, in this diversity case, does state or federal law determine when post-judgment interest begins to accrue? Next, should 28 U.S.C. § 1961 be strictly construed to begin interest only from entry of a second judgment upon remand from a modification on appeal, or more liberally to provide interest from the date when a correct judgment should have been entered? Finally, how should the 1982 amendment of § 1961 affect the application of interest, when the original judgment was entered before that amendment and the judgment upon retrial was entered subsequent to the amendment? We consider these issues in order.

### A.

Since the 1948 revision and at the time the original judgment in this case was rendered, the relevant post-judgment interest statute relied on the applicable state interest rate:

Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.

28 U.S.C. § 1961 (1976). Effective Oct. 1, 1982, the third sentence was amended to provide a uniform federal post-judgment interest rate, as follows:

Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute no-

tion whether this date should be related back to March 6, 1980.

tice of that rate and any changes in it to all Federal judges.

28 U.S.C. § 1961(a)(1982).

■ On the question of which judgment should be used to trigger interest in this case, we conclude that this is a matter of federal, not state, law. Differing views on the choice of law question have been expressed, however, *see, e.g., Affiliated Capital Corp. v. City of Houston,* 793 F.2d 706, 709 n. 3 (5th Cir.1986) (en banc) (federal court sitting in diversity must apply substantive law of the state regarding rate and accrual of interest on a judgment); *Weitz Co. v. Mo–Kan Carpet, Inc.,* 723 F.2d 1382, 1387 (8th Cir.1983) (Swygert, Senior Judge, dissenting) (if Congress intended to declare the rate of interest due on judgments in diversity cases, it would have done so in more explicit terms than are contained in the statute as amended in 1982).

The amended statute by its terms covers interest "on any money judgment in a civil case recovered in a district court." It is true that the Supreme Court in *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), observed that in diversity cases "the courts of the state and the federal courts sitting within the state should be in harmony" on whether post-judgment interest should be allowed to run from verdicts as well as from judgments. *Id.* at 497, 61 S.Ct. at 1022 (quoting *Massachusetts Benefit Association v. Miles,* 137 U.S. 689, 691, 11 S.Ct. 234, 235, 34 L.Ed. 834 (1891)). *Miles* held that when state law allowed interest to accrue from a verdict before judgment, the predecessor statute to § 1961—which also provided that interest be calculated from the "date of the judgment"—was not to the contrary because "where such allowance is expressly made by a state statute, we consider it a right given to a successful plaintiff, of which he

ought not to be deprived by a removal of his case to the Federal court." *Miles,* 137 U.S. at 691, 11 S.Ct. at 235.

Both *Klaxon* and *Miles* thus stand for the merely permissive proposition that a state law allowing post-judgment interest to accrue from a date earlier than court entry of the judgment should be respected in diversity cases.[2] Moreover, *Klaxon* and *Miles* were decided before later elaboration of the *Erie* doctrine had taken place.

■ In *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), the Supreme Court held that "Congress has no power to declare substantive rules of common law applicable in a State...." In *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Court provided the clarification that when a federal rule and a state law conflict, the state law must give way so long as Congress has the constitutional power to regulate an area which is "rationally capable of classification as either" substantive or procedural. *Id.* at 472, 85 S.Ct. at 1144. While prejudgment interest is a substantive aspect of damages in a diversity case and is thus properly viewed as a matter of state law, post-judgment interest is at least "rationally capable of classification" for *Erie* purposes as procedural. Although the primary purpose of post-judgment interest is to compensate a successful plaintiff for the time between his entitlement to damages and the actual payment of those damages by the defendant, post-judgment interest also serves a salutary housekeeping purpose for the forum by creating an incentive for unsuccessful defendants to avoid frivolous appeals and by minimizing the necessity for court-supervised execution upon judgments. *See Weitz,* 723 F.2d at 1386–87; S.Rep. No. 275, 97th Cong., 2d Sess. 30, *reprinted in* 1982 U.S.Code Cong. & Admin.News 11, 40.

---

**2.** Bailey asserts in his brief that both Tennessee and California law, which provide the forum and underlying substantive law that governs the fraud claim in this case, would permit accrual of post-judgment interest from the first judgment. *See Bailey v. Chattem, Inc.,* 684 F.2d at 392–93; *American Buildings Co. v. DBH Attachments, Inc.,* 676 S.W.2d 558 (Tenn.App.1984);

*Stockton Theatres, Inc. v. Palermo,* 55 Cal.2d 439, 11 Cal.Rptr. 580, 360 P.2d 76 (1961); *Snapp v. State Farm Fire & Casualty Co.,* 60 Cal.2d 816, 36 Cal.Rptr. 612, 388 P.2d 884 (1964). In view of our determination *infra* that federal, not state law, governs the question of accrual of post-judgment interest, we express no opinion on the result reached applying state law.

Our conclusion is buttressed by Justice Harlan's concurrence in *Hanna* and by the most recent Supreme Court expression in this area. In *Hanna*, Justice Harlan expressed the view that state law should govern only the "primary stages of private activity" of the parties from which litigation may arise. 380 U.S. at 475–77, 85 S.Ct. at 1146–47 (Harlan, J., concurring). Accrual of post-judgment interest is hardly the type of "primary ... private activity" that would form the basis of business planning; nor does it seem likely that a somewhat more liberal rule in the federal courts would result in forum-shopping.

In *Burlington Northern Railroad Co. v. Woods*, —— U.S. ——, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987), the Court held that a *Hanna*-type "conflict" existed between the federal standard for assessing penalties for frivolous appeals, a broad discretionary standard, and an Alabama statute that imposes a mandatory penalty upon judgments that are affirmed on appeal. *See id.* 107 S.Ct. at 971 & n. 5 (citing Fed.R.App.P. 37, 38; 28 U.S.C. § 1961). *Woods* clarifies *Hanna* by providing that state law must give way to the federal standard even though it is discretionary. The *Woods* rationale suggests that a federal rule should be applied here rather than applying a state rule under the *Klaxon–Miles* line of reasoning. Federal law therefore governs the question of which judgment should be used in determining the date when interest begins to run in this case. *Accord, Weitz Co. v. Mo–Kan Carpet, Inc.*, 723 F.2d 1382 (8th Cir.1983) (majority opinion); *G.M. Brod & Co v. U.S. Home Corp.*, 759 F.2d 1526, 1542 (11th Cir.1985).

### B.

█ Chattem argues that interest can accrue only from the judgment entered after retrial because the earlier vacated judgment has become a nullity. This view is based on a formalistic reading of the statutory phrase "date of entry of the judgment" favored in the Second, Eighth,[3] and Tenth Circuits but rejected in our own and four other circuits and at least impliedly disfavored by the Supreme Court. We agree with the majority view that the statutory phrase must be interpreted broadly to effectuate the purposes of post-judgment interest. *See generally*, Comment, *Interest on Judgments in the Federal Courts*, 64 Yale L.J. 1019 (1955) (hereinafter *Interest on Judgments*).

In *National Bank v. Mechanics' National Bank*, 94 U.S. (4 Otto) 437, 24 L.Ed. 176 (1876), the Court allowed interest pursuant to the predecessor to § 1961 to accrue from a demand for payment which, although not reduced to judgment, was "proved to the satisfaction of the comptroller" and therefore was "of the same efficacy as judgments, ... occupied the same legal ground," and hence was "within the equity, if not the letter, of these statutes." *Id.* 94 U.S. (4 Otto) at 439.

This Circuit and the First, Third, Fifth, and Ninth Circuits have taken this "equity of the statute" approach to hold, in a proper case, that post-judgment interest can accrue from an event other than the final judgment entered by the district court. *See, e.g., United States v. Bank of Celina*, 823 F.2d 911 (6th Cir.1986) (district court modification of district court judgment without intervening appeal); *Swartzbaugh Manufacturing Co. v. United States*, 289 F.2d 81 (6th Cir.1961) (judgment reduced on appeal in Contract Appeals case not subject to § 1961); *United States v. Michael Schiavone & Sons, Inc.*, 450 F.2d 875 (1st Cir.1971) (judgment reduced on appeal); *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270 (3d Cir.1987) (verdict); *Affiliated Capital Corp. v. City of Houston*, 793 F.2d 706 (5th Cir.1986) (en banc) (interest available upon JNOV reversal, but rejected on equitable grounds); *Louisiana & Arkansas Railway Co. v. Pratt*, 142 F.2d 847 (5th Cir.1944) (appellate reversal of JNOV for defendant; interest accrued from the verdict for plaintiff "when & when the judgment should have been entered"); *Turner v. Japan Lines, Ltd.*, 702 F.2d 752 (9th Cir.1983) (reversal of JNOV for defendant);

---

**3.** A recent Eighth Circuit case, however, without reference to the earlier case law, appears to adopt a contrary view. *See Buck v. Burton*, 768 F.2d 285 (8th Cir.1985).

*Perkins v. Standard Oil Co. of California,* 487 F.2d 672 (9th Cir.1973) (damages reduced on appeal); *see generally Interest on Judgments* at 1048 ("the real issue is who should bear the cost resulting from the loss of use of the money").

Chattem argues that this entire line of cases can be distinguished because the amount of damages due Bailey never was *ascertained* until judgment upon retrial, citing dictum in *Turner,* 702 F.2d at 754–56, and case law from other circuits, including *Ashland Oil, Inc. v. Phillips Petroleum Co.,* 607 F.2d 335 (10th Cir.1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980); *Hysell v. Iowa Public Service Co.,* 559 F.2d 468 (8th Cir.1977); and *Powers v. New York Central Railroad Co.,* 251 F.2d 813 (2d Cir.1958). These last three cases, while perhaps susceptible of an interpretation that they *could* have been decided on an "ascertainment" ground, in fact were grounded upon a *per se* rule that the § 1961 "judgment" must be the judgment upon remand. *Compare Powers,* 251 F.2d at 818 ("The delay in the entry of the proper judgment was necessary in the sense that time for appellate reviews was required.") (quoting *Chemical Bank & Trust Co. v. Prudence–Bonds Corp.,* 213 F.2d 443, 445 (2d Cir.), *cert. denied,* 348 U.S. 856, 75 S.Ct. 80, 99 L.Ed. 674 (1954)) *with Powers,* 251 F.2d at 818 (majority opinion "an ironbound, inequitable and illogical rule") (Lumbard, J., dissenting); *see Ashland Oil,* 607 F.2d at 336; *Hysell,* 559 F.2d at 476–77.

The Ninth Circuit also has rejected the *Turner* "ascertainment" theory. In *Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282 (9th Cir.1984), *cert. denied,* 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985), post-judgment interest was permitted to accrue from the initial date of judgment after a jury verdict was vacated and remanded for a new trial to determine liability and damages under a different standard of liability. The second jury again found liability and awarded nearly double the amount of damages awarded originally. *See id.* at 1298–1300 (relying on *Twin City Sportservice, Inc. v. Charles O. Finley & Co.,* 676 F.2d

1291, 1311 (9th Cir.), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982)).

*Twin City* viewed the award of interest in circumstances analogous to this case as mandatory, not discretionary. 676 F.2d at 1311. We would not go so far. *See Affiliated Capital,* 793 F.2d at 709–10.

■ Determining the "equity of the statute" in a case like this requires an inquiry into the nature of the initial judgment, the action of the appellate court, the subsequent events upon remand, and the relationship between the first judgment and the modified judgment. In this case, our Court's affirmance of liability, coupled with our determination that "some damages" would be due upon retrial, makes it equitable to allow interest to accrue from the date of the first judgment upon remand. The retrial of the damages issue was tried upon the same theory of liability as before. Liability for damages had already been determined; what remained was the measurement of damages.

■ The plaintiff concedes that equity requires that interest should run only on the first $400,000 of the second judgment rather than the full $627,000. We therefore conclude that when the measurement of damages found by a second, properly instructed jury includes within it a lesser amount of damages which was also found by the jury in the first trial, considerations of equity lead us to run interest on that lesser amount from the date of the first judgment.

Chattem argues that running interest on that portion of the second judgment which was included in the first judgment creates a double-counting problem. Relying on the testimony of the plaintiff's economic expert, Chattem asserts that the portion of the 1983 jury's award attributable to past damages included a Consumer Price Index-based adjustment for the period from 1981 to 1983. Chattem argues that the time value of the 1980 damages award was thus taken into account in the 1983 award. To also allow interest to accrue on that award will therefore result in the payment of interest on an award which has already been adjusted to compensate for the passage of

time. This argument ignores the underlying rationale for the testimony of the plaintiff's expert. The expert adjusted the values for each year in accordance with the CPI because the contract was tied to the CPI. Each year, Bailey was to be paid $32,400 in 1975 dollars (minus an offset for consulting). Therefore, the adjustments made by Bailey's expert did not take into account the time value of the wages already due under the contract. He merely calculated the amount that was actually due each year. The same process was used to determine future earnings. The future earnings were brought back to present value, but the past earnings were *not* adjusted upward to reflect their 1983 value.

If the 1980 jury had calculated future earnings on the basis of CPI projections, their results for the period between 1981 and 1983 might have been different than those of the 1983 jury, since the later jury could rely on actual data rather than projections. Depending on the discrepancy between the projections and the actual data, this could result in either a windfall or a shortfall for Bailey. However, it is impossible to determine the amount of this windfall, if such a windfall was created. We will not engage in second-guessing a jury when doing so would require us to speculate as to the figures relied upon in jury deliberations.

Therefore, as long as the entire amount of the $400,000 1980 judgment was included within the 1983 judgment, interest on the $400,000 should run from 1980. In other words, interest should run on the entire amount of the 1980 judgment unless the 1980 value of the 1983 judgment is less than $400,000. For the 1980 value of the 1983 judgment to be that small, a discount rate of over 16% would have to be applied. While we cannot determine what discount rate would have been used in 1980 to determine the present value of that portion of the earnings stream which was attributable to the period between 1981 and 1983, it is clear that no reasonable jury would have relied on a discount rate as large as 16%. It is therefore safe to say that the entire 1980 award was included within the 1983 award, and that therefore interest on the

$400,000 attributable to the 1980 award should run from 1980.

## C.

The final issue is what rate of interest to apply. The first judgment was entered more than two years before the effective date of the 1982 amendment to § 1961. Courts have disagreed over whether to apply the federal method of determining interest to judgments entered before October 1, 1982. A majority of circuits have concluded that the amended statute should apply only to judgments entered after its effective date. *See Campbell v. United States,* 809 F.2d 563, 569 (9th Cir.1987) (collecting cases). *But see R.W.T. v. Dalton,* 712 F.2d 1225, 1234–35 (8th Cir.) (holding that the amended statute should apply to a pre-effective date judgment for the entire post-judgment period), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

The issue is whether "to apply the law in effect at the time [a court] renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

The Court in *Campbell* undertook a comprehensive review of the case law and sparse legislative history in this area, which we will not reiterate here. *See Campbell,* 809 F.2d at 568–76. We agree with the Ninth Circuit that what little legislative history exists on the 1982 amendments indicates that Congress did not intend the new method of computing interest to apply to judgments entered before the act's effective date—at least for interest accruing before the effective date. We also agree that it is not unjust to impose interest at the Treasury bill rate *after* the act's effective date. *See id.* at 574.

## IV.

Accordingly, the order of the Magistrate is reversed and remanded for calculation of

post-judgment interest consistent with this opinion. The calculation of interest should use the applicable state rates from October 27, 1980 to October 1, 1982. From October 1, 1982, the effective date of the amendment to § 1961, to the 1983 judgment date and thereafter the calculation should use the applicable § 1961 rates.

KRUPANSKY, Circuit Judge, concurring in part, dissenting in part.

I concur with the majority in its disposition of this case in all respects except that I would not apply the post judgment interest rate mandated by the amended version of 28 U.S.C. § 1961 retroactively to the October 27, 1980 judgment date assigned by the majority in its opinion because retroactive application would conflict with the clear and concise language of § 1961, which became effective on October 1, 1982.

An objective analysis of the pertinent statutory language of § 1961 which provides that "interest *shall* be calculated *from the date of the judgment,* at a rate equal to the coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately *prior to the date of the judgment"*, reflects a congressional intent of prospective and not retroactive effect of its enactment of the statute.

Initially, in *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court advised that a court is to apply the law, in effect, at the time it rendered its judgment, unless such action would result in manifest injustice, or the legislative history of an enactment directs the contrary.

Mindful of the pronouncements of *Bradley,* my attention is directed to the Fifth Circuit's comments in *Brooks v. United States,* 757 F.2d 734, 741–42 (5th Cir.1985) wherein that court in commenting upon the Second Circuit's analysis of the issue at bar in *Litton Sys. v. American Tel. & Tel. Co.,* 746 F.2d 168 (2d Cir.), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984) stated:

In the instant case, a fair construction of the FCIA leads to the conclusion that Congress did not intend for the T-bill rate to apply to judgments entered prior to the effective date of the FCIA. The statute directs that the "interest shall be calculated *from the entry of the judgment* at a rate equal to the coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately *prior to the date of the judgment."* 28 U.S.C. § 1961(a) (emphasis supplied). Section 402 of the FCIA provides that the act "shall take effect on October 1, 1982." As the Second Circuit noted, the conjunction of the provision creating the effective date of the statute and the "statutory direction to calculate a rate based [on the T-bill rate] ... 'immediately prior to the date of the judgment' is a strong indication that Congress expected the new formula to apply only to judgments entered after the effective date of the statute." *Litton,* 746 F.2d at 174.

Moreover, this result is consistent with the practice of courts in applying and interpreting the FCIA's amendments to section 1961. In providing for the effective date of the FCIA, Congress noted, "The delay is intended to provide time for planning the transition and for permitting the bar to become familiar with the provisions." S.Rep. No. 97–275, 97th Cong., 1st Sess. (1981), U.S.Code Cong. & Admin.News 1982, pp. 11, 42.

In *Litton,* the Second Circuit, recognizing the dilemma posed by the retroactive application of § 1961 as suggested by the majority opinion herein, stated:

If amended section 1961 were applied to judgments entered before its effective date but with interest at an increased rate accruing only from the effective date, choice would have to be made as to the applicable rate. Litton contends that the rate should be the average coupon yield of Treasury bills auctioned just prior to June 30, 1981, the date the judgment entered. That makes no economic sense at all and could not have been intended by Congress. Since Litton's

judgment was properly accruing interest at 9% from the date of its entry until at least October 1, 1982, it would be an unwarranted windfall to have it accrue interest thereafter at a rate determined by market conditions 15 months earlier. On the other hand, if the rate accruing from the effective date of the statute was the average coupon yield of Treasury bills auctioned just prior to that effective date, the result would be economically defensible, but hopelessly inconsistent with the terms of the statute, which tie the applicable rate to the date of the judgment. We therefore reject Litton's fall-back position, *but see Handgards, Inc. v. Ethicon, Inc.*, 552 F.Supp. 820 (N.D.Cal.1982), *aff'd*, 743 F.2d 1282 (9th Cir.1984), and construe amended section 1961 to have no application to judgments entered before October 1, 1982.

*Litton Sys. v. American Tel. & Tel. Co.*, 746 F.2d 168 (2d Cir.), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984), *see also Merit Ins. Co. v. Leatherby Ins. Co.*, 728 F.2d 943 (7th Cir.1984); and *United States v. Dollar Rent a Car Systems, Inc.*, 712 F.2d 938, 9410 n. 5 (4th Cir.1983).

Because I conclude that the reasoning and disposition of the Fifth and Second Circuits in *Brooks* and *Litton*, respectively, are more persuasive than the rationale of the Ninth Circuit in *Campbell v. United States*, 809 F.2d 563 (9th Cir.1987), I would apply the pre–1982 version of § 1961 which would, in turn, apply the post judgment interest rate as prescribed by the Tennessee statute to the entire 1980–83 post judgment period in issue.