896 F.2d 553
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Virginia EASTER, Plaintiff-Appellant/Cross-Appellee,
v.
JEEP CORPORATION, Defendant-Appellee/Cross-Appellant.
 Nos. 88-3564, 88-3613.
 United States Court of Appeals, Sixth Circuit.
 Feb. 26, 1990.
 
 1
 Before KRUPANSKY and RYAN, Circuit Judges and HENRY R. WILHOIT, District Judge.*
 
 
 2
 HENRY R. WILHOIT, District Judge.
 
 
 3
 This appeal and cross-appeal arise from a judgment of the United States District Court for the Northern District of Ohio which awarded the appellant, Virginia Easter, backpay and attorney's fees for her sex discrimination claim. Easter's battle with Jeep Corporation ("Jeep") began nearly nineteen years ago; has resulted in the recusal of two judges and one special master; and is now on its third appeal to this court. If ever a case needed a final resolution, this one is it. For reasons discussed below, the Court affirms the decision of the district court.
 
 
 4
 * This Court has already chronicled a portion of the history of this case in Easter v. Jeep, 750 F.2d 520 (6th Cir.1984). Virginia Easter was hired by Jeep as a technical writer or contract administrator in March, 1968. After working for Jeep ten months, she submitted her resignation. In July 1971, she filed suit against Jeep, alleging that Jeep had discriminated against her on the basis of her sex. She also alleged class action claims on behalf of Jeep's female employees. In 1975, after a bench trial on the liability issues alone, the trial court found for Easter on her individual claim and against her on the class claims. Easter filed an interlocutory appeal and Jeep filed a cross-appeal. This Court affirmed the lower court on the issue of injunctive relief and dismissed all other aspects of the appeal as being beyond its jurisdiction.
 
 
 5
 On remand, Easter asked the trial judge to recuse, which he did, after noting that the motion to recuse was a "masterpiece of bad timing", because he had recently completed but not yet issued a memorandum opinion and order granting Easter substantial relief. Easter then sought to have the case transferred back to the trial judge. The trial judge agreed to take the case back and entered an award granting backpay and attorney's fees to Easter. This Court found that it was error for the trial court to enter a judgment awarding backpay and attorney's fees after it had agreed to recuse. The case was remanded to the district court for assignment to a different judge to determine the appropriate amount of attorney's fees and backpay.
 
 
 6
 The next judge who was assigned the case recused, and the case was referred to different judge who then referred the case to a special master. The special master then recused, because of ex parte contacts with one of Easter's attorneys. The third judge took the case back and one year later entered a judgment awarding backpay and attorney's fees to Easter. From this judgment, Easter and Jeep appeal.
 
 II
 
 7
 Easter argues that the lower court made several errors in its approach to her case. First, Easter argues that the lower court reversed findings of fact made by the first judge in the liability phase of the case. However, the findings to which Easter refers were made during the remedial stage of the case. When this Court reversed the trial judge on the amount of back pay and attorney's fees which were awarded, the next judge was free to make his own judgment on these issues. Harrington v. Vandalia-Butler Bd. of Ed., 649 F.2d 434, 438 (6th Cir.1981).
 
 
 8
 Secondly, Easter argues that the lower court erred when it made credibility findings without the benefit of evidentiary hearings. Jeep responds that the parties had agreed to a decision based on the record rather than conducting new hearings on the remedial aspects of the case. Since the parties had agreed to this procedure, the Court can find no error here.
 
 
 9
 Third, Easter argues that the lower court erred by adopting substantially, and in some places, verbatim, portions of Jeep's proposed findings of fact and conclusions of law.[2] This Court must determine whether the lower court's findings were the product of its own decision. Anderson v. Bessemer, 470 U.S. 565 (1985). Easter provided the Court with an appendix which compared eleven sentences from Jeep's proposed findings with the lower court's ruling. Many of these sentences concern inconsequential factual findings. In addition, the lower court did not reach Jeep's proposed result. Consequently, the Court cannot conclude from the incorporation of a few sentences from Jeep's proposed findings that the lower court did not engage in a critical and independent review of the case.
 
 III
 
 10
 The primary focus of this appeal centers on the lower court's decision to award attorney's fees and backpay, and the amount to be awarded. Jeep argues in its cross-appeal[3] that Easter should not be awarded any backpay, because she committed perjury during the course of these proceedings. Jeep claims that Easter gave false answers to interrogatories and false testimony during the hearing on damages regarding her earnings and availability for work. Easter stated in interrogatories and at the hearing that she was always available for work, when in fact, during 1974, Easter was ill for a period of time and unable to work. Jeep raised this issue with the lower court and it was rejected. Given the time span involved in this case, and the absence of any evidence showing an intentional falsehood, the Court cannot conclude that the lower court erred in rejecting Jeep's argument.
 
 
 11
 Easter and Jeep dispute the lower court's finding that the appropriate cutoff date for Easter's backpay was December 31, 1976. Jeep claims that the cutoff date should have been much earlier. Easter claims that her right to backpay has never terminated, because she has not lost interest in employment at Jeep and has never rejected an offer of reinstatement.
 
 
 12
 When backpay should terminate depends upon the particular circumstances of the case and upon the application of the broad "make whole" principle of Title VII. E.E.O.C. v. Monarch Machine Tool Co., 737 F.2d 1444, 1452 (6th Cir.1980); Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975). The lower court determined that the cutoff date for Easter's backpay should be December 31, 1976. The first and apparently foremost reason for selecting this date is Easter's statement during the liability trial in 1975 that she was no longer interested in employment at Jeep. This statement supports the lower court's finding that Easter did not desire reinstatement.
 
 
 13
 Easter reasons that if the lower court had intended to use Easter's statement during the liability trial to determine the reasonable period of backpay that the cutoff date would have been set at the time the statements were made in 1975 rather than December 31, 1976. Why the trial judge chose December, 1976 is somewhat unclear. However, the judge stated that absent the delays which had occurred in this case, the original final judgment would have been entered in December, 1976. That is, absent an interlocutory appeal and the motion to recuse, the first judge would have entered a final judgment awarding backpay by December, 1976. The December, 1976 date was a reasonable estimate of when the first judge would or should have entered his judgment.
 
 
 14
 Jeep urges that the cutoff date for Easter's backpay should have been earlier than 1976. Jeep points to the fact that Easter moved several times prior to 1976; that she quit a job as a newspaper reporter in 1971; that she was disabled and unable to work in 1974; that she had only nominal earnings from 1974 to 1978. The majority of these facts relate to Easter's attempts to mitigate her damages, not to Easter's entitlement to backpay. The lower court could give credit to Easter's job hunting file; those jobs she did hold; and her statements that she made every effort to obtain employment, but that the market was limited in her chosen career, technical writing for companies administering government contracts. Jeep also urges that its elimination of Easter's position should terminate her right to backpay. While no employee held a position with Easter's same job title, other employees performed comparable duties.
 
 
 15
 To determine the amount of backpay, the lower court had to select a comparable employee, an employee who performed duties similar to those done by Easter, and to decide if Easter had made reasonable efforts to mitigate her damages by finding and maintaining employment. Easter disputes the lower court's selection of Miller and Mielke as comparable employees. Easter urges that Markwood was her comparable employee. The lower court compared Markwood and Easter and found that their duties and position at Jeep were not similar. There is ample support for this conclusion in the record. It will rest undisturbed.
 
 
 16
 By way of mitigation, the lower court determined that Easter should have earned $7,851.35 for each year of the backpay period. Easter protests that this figure represents the most she made in any one year during the entire period. The lower court could view Easter's employment history with some suspicion with respect to her efforts at mitigation. For long periods of time during this seven year period, Easter made nominal earnings. During the year which the lower court used as its standard for determining the amount Easter should have earned, Easter earned less than the amount she earned during her ten months at Jeep. The Court cannot conclude that the figure the lower court assigned as Easter's mitigation value was an abuse of discretion.
 
 IV
 
 17
 No one was satisfied with the lower court's award of attorney's fees. Jeep argues that attorney's fees should be denied, because of Easter's counsel's knowledge of his client's perjury, his conduct in the litigation and his grossly inflated fee demand. As noted earlier, the lower court rejected Jeep's perjury claim. This Court does not view counsel's culpability differently than it does Easter's, in light of the fact that it was Easter's counsel who exposed the discrepancy, in a letter attached as an exhibit to a memorandum. This letter was written by Easter to her attorney and mentioned her illness and incapacity in 1974. The unthinking inclusion of this letter as an exhibit indicates that Easter's counsel was unaware of his client's misstatement. All in all, a short period of illness in a seven year period is a fairly minor matter to lie about and was rightly considered unimportant by the lower court.
 
 
 18
 Jeep charges that the conduct of Easter's counsel during the course of this litigation is grounds for denying attorney's fees. In particular, Jeep points to the motions for recusal, appeals, and other frivolous motions filed by Easter's counsel. The lower court did not specifically address this argument. This Court does perceive that some of the motions filed and the tactics taken by Easter's counsel were unwarranted. Yet, denying all fees would be a more drastic sanction than the Court concludes is warranted by this record.
 
 
 19
 Jeep urges that Easter's counsel's grossly inflated fee demand[4] justifies denying the fee petition. Jeep theorizes that imposing such a sanction would act as a deterrent to constrain unreasonable and greedy members of the bar. No doubt the original demand was unreasonable. However, the district court's discretion to deny attorney's fees is limited. New York Gaslight Club v. Carey, 447 U.S. 54 (1980). In this case, the district court exercised its discretion by paring down Easter's request rather than denying all fees. This may be a better method of dealing with the problem than a rule requiring the forfeiture of all fees. In any case, the court did not abuse its discretion.
 
 
 20
 Easter urges that the trial judge disallowed fees attributable to the class action which were actually spent on her prevailing individual claim. As support, Easter asserts that the individual and class claims were identical; that all work performed on behalf of the class was related to and necessary to Easter's individual claim; that the scope of discovery on the class and individual claims was the same. A review of the entire record demonstrates that Easter's assertions are unfounded. The class claims, brought on behalf of Jeep's production workers, involved various alleged discriminatory policies. Easter's individual claim was that certain male co-workers drove her out of Jeep's employ by their individual acts of harassment. The two claims were distinct and involved different proof. The evidence in support of the class claim was largely statistical. The evidence in support of Easter's claim was her testimony and the testimony of other employees who worked with her at Jeep. The lower court could make a determination of which hours were spent on Easter's claim and which were spent on the class claims.
 
 
 21
 Easter argues that the lower court erred by disallowing all time which might have been spent on the class claims rather than deducting a percentage of that time. By this argument, Easter seeks to reinstate the first judge's more favorable disposition of her fee petition. The first judge, rather than attempt to separate all the hours spent by Easter's attorney on her individual claim from the hours spent on the class claim, deducted a blanket percentage from the fee demand. The final judge performed a line by line analysis of the fee petition and eliminated those hours which related to the class action. The Court can see no error in this procedure. It is in line with this Court's ruling in Kelley v. Metropolitan County Bd. of Ed., 773 F.2d 677, 685 (6th Cir.1985).
 
 
 22
 Easter contends that the lower court erred when it refused to award attorney's fees for work performed after 1982. In particular, Easter claims that the court should have awarded fees for work performed on appeal and in seeking their fees. The lower court did not err in refusing to award fees based on the prior appeal, since Easter did not prevail on her appeal. Id. at 682.
 
 
 23
 In addition, the lower court mentioned in its opinion that no evidence was considered after the record was closed for the purpose of receiving evidence. The parties had agreed to a decision based on the record created by the first judge. The first judge entered his final judgment on the amount of attorney's fees in 1982. Thus, any attorney's fees petitioned for after 1982 would have been after the record was closed. Nor would this be unfair to the attorneys, since the work they performed in seeking their fees, the hearings and depositions, were prepared for the first judge, prior to 1982.
 
 
 24
 Easter contests the $80 hourly rate set by the lower court as being a "historical rate going back twenty years". In fact, the record indicates that Easter failed to submit any evidence of the appropriate hourly rate. The lower court adopted the rate set by the first court as the appropriate rate. This rate was based upon attorney's fees awarded in another similar case tried in the district court. Nothing in the record indicates that this rate was unreasonable. Further, the hourly rate was not outdated, but one appropriate for legal work performed in 1982. Thus, Easter's attorneys were compensated for all their work at an hourly rate appropriate for their final year. Easter should not complain about this result.
 
 
 25
 Finally, Easter urges that the lower court erred by failing to award a multiplier, or upward adjustment of the fee to compensate her attorneys for their risk of loss. The United States Supreme Court in Pennsylvania v. Delaware, 483 U.S. 711 (1987), discouraged the use of multipliers to compensate an attorney for his risk of loss, except in rare circumstances. The lower court found no circumstances that warranted adjusting the fee. Easter points to nothing in the record which would alter this conclusion.
 
 V
 
 26
 Easter and Jeep dispute the lower court's interest award. The lower court awarded interest from December, 1976 on Easter's backpay and October, 1982 on the attorney's fees. October, 1982 was the date when the first judge entered its backpay and attorney's fee award. The lower court characterized the interest from 1976 to 1982 as prejudgment interest, and the interest from 1982 on the backpay and attorney's fees as postjudgment interest. In its characterization, the court relied on Bailey v. Chattem, Inc., 838 F.2d 149 (6th Cir.1988).
 
 
 27
 In granting prejudgment interest on the backpay award, the lower court exercised its discretion to compensate Easter for her loss of the use of her money. The court reasoned that Jeep's liability to Easter was adjudged as of November, 1975. The court estimated that the final judgment awarding her backpay should have been entered no later than December, 1976. Thus, Easter was entitled to have the use of her money no later than 1976.
 
 
 28
 Easter maintains that the court erred by not awarding prejudgment interest on the attorney's fees or backpay award. Actually, the court did award partial prejudgment interest to Easter on her backpay award. The court exercised its discretion in awarding partial prejudgment interest to make Easter whole for the injuries she had suffered. The Court cannot say that she was entitled to anything more. Likewise, the lower court's refusal to grant any prejudgment interest on the attorney's fee award was not an abuse of discretion.
 
 
 29
 Jeep argues that Bailey is distinguishable from the case at bar for two reasons. First, the jury in Bailey awarded more damages in the second trial than in the first trial. Nevertheless, a fair reading of Bailey would allow interest to run from the date of the first judgment for any amount which was common to the first and second judgments. Since Easter's second judgment was less than her first, interest should run on the entire amount.
 
 
 30
 Second, the reversal of the first judgment was not attributable to any act of the plaintiff in Bailey, but is attributable to Easter's actions in the case at bar. This factor was not part of the court's decision in Bailey. Instead, the court found that the determination of whether postjudgment interest should run from the first judgment: "requires an inquiry into the nature of the initial judgment, the action of the appellate court, the subsequent events upon remand, and the relationship between the first judgment and the modified judgment." Bailey at 154. The lower court did not err in its interpretation of Bailey.
 
 VI.
 
 31
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [2]
 Easter also charges that the lower court did not read the record. There is no support for this allegation, and this Court, in reviewing the lower court's opinion, can find no indication that the decision was not the product of a careful review of the record
 
 
 [3]
 Easter urges that Jeep's cross-appeal should be dismissed for lack of jurisdiction. Easter argues that this Court has already determined that attorney's fees and backpay are appropriate. This argument is based on a statement by this Court in its earlier ruling. The Court ordered that this case be remanded for a determination of the appropriate amount of damages and attorney's fees. This statement does not foreclose the possibility that an appropriate amount of damages may be zero
 
 
 [4]
 The original fee petition submitted by Easter's counsel requested over $400,000