[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 04-12441
04-13704
04-14150
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 29, 2005
THOMAS K. KAHN
CLERK

D.C. Docket  No. 00-08041-CV-KLR

PINES PROPERTIES, INC.,
a Florida Corporation,

Plaintiff-Counter
Defendant-Appellant,

versus

AMERICAN MARINE BANK,
a Washington Corporation,

Defendant
Counter- Claimant
Third-Party Plaintiff
Appellee,

FIRST MIAMI SECURITIES, INC.,
a Florida Corporation,

Third-Party Defendant.
_____

Appeals from the United States District Court
For the Southern District of Florida
_____

(November 29, 2005)

Before BARKETT and MARCUS, Circuit Judges, and GEORGE[*], District Judge.

PER CURIAM:

Pines Properties, Inc., ("Pines") appeals from a final judgment entered for American Marine Bank ("American Marine") on a jury verdict against Pines.  The trial came after the Circuit's remand to resolve whether the term "credit facility," as used in the initial pledge agreement securing American Marine's credit to Eurowest Trading ("Eurowest"), contemplated a continuing credit relationship for future loans and collateral, or was limited to the initial advance.  Pines Properties v. American Marine Bank, 48 Fed. Appx. 739 (11th Cir. 2002) (Pines I).   The ambiguity raised an issue of fact as to Pines' breach of contract claim and suretyship defense that its pledge was released by American Marine's alteration of the terms of the initial pledge agreement.  Id. at 17-18, 25-27.  Pines I sets forth the factual background of this case, and this opinion discusses only the facts relevant to this appeal.

Pines' first assignment of error is that the district court abused its discretion in granting American Marine's motion to strike Pines' proffered expert witness,

---

[*] Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

Thomas Rossin.[1]  The district court ruled that Rossin's testimony was irrelevant and unnecessary since "what matters is the intent of the parties themselves." R424 at 10.  As the district court concluded, Rossin's opinions went generally to whether the loan had been mismanaged, an affirmative defense that previously had been rejected on appeal.

Pines argues, however, that in its response to American Marine's motion to strike, it also identified statements Rossin made in his deposition about whether the ambiguous term "credit facility" establishes a continuing commercial guarantee.  R410 at 7.  In particular, Rossin testified that  "[w]hether it would apply to distributions after [the first pledge], I just don't know.  It's not clear from the pledge agreement that it does."  R410, Exhibit 5 at 72.  As the district court determined, however, the ambiguity of the term "credit facility" was the very reason for remand, and Rossin's opinion that he did not know whether it applied to future distributions was unnecessary and irrelevant to the parties' intent.

Pines also argues that, in its response to the motion to strike, it indicated that Rossin had testified in deposition, and would have testified at trial, that the pledge agreements "are not continuing, they don't specify what the loan is that

---

[1]American Marine's motion to strike (DE 406) is missing from the district court files transmitted to the Court.  The positions taken in that document, however, have been adequately represented in the related trial court briefing, district court rulings, and briefing on appeal.

they are being pledged for, they do not have the normal language in them that an agreement of this type would normally include." R410 at 8. However, a full reading of that portion of Rossin's deposition testimony supports the district court's discretion to exclude it.

After Rossin stated why he thought the pledge agreements were not continuing, he was asked to identify the language that he had stated such agreements should normally include. R410, Exhibit 5 at 84. Rossin did not offer any specific language, but responded "[l]anguage in any number of the documents that bank has used in connection with this loan and I guess with their normal loan practice . . . ." Id. At that point, Rossin was asked if he had been retained to give such an opinion, and he responded, "No." Rossin was then asked if he intended to testify at trial regarding what he was just saying, and he responded, "[n]o, I'm going to give testimony as to the banking practices, not legal." Id. Finally, when Rossin was asked if he was going to "giv[e] an opinion as to how the pledge agreement should have been drafted," he responded that "I think I might testify whether I thought it was a reasonable document." Id.

Rossin's statement that he was not retained to testify on the language normally included in continuing loan agreements, standing alone, supports the district court's decision not to allow Rossin to testify. Rossin's other nebulous

4

references to testifying only to "banking practices, not legal," and possibly the "reasonableness" of the pledge agreement, are no more helpful in clarifying the relevance of his opinions.[2]  Finally, Rossin never testified about how the term "credit facility" was used in the banking industry, or what terminology would normally be used in the industry to designate a continuing loan agreement.  The district court did not abuse its discretion in excluding Rossin as an expert witness.

Pines' second assignment of error is that the district court abused its discretion in denying Pines' motion to amend the complaint to add the affirmative defense that American Marine failed to notify Pines of American Marine's intended disposition of Eurowest collateral.  The district court ruled that Pines' motion was "untimely, as it had ample opportunity to raise the issue of reasonable notification before it offered this current motion."  R391 at 7.

The determination of whether to grant leave to amend the complaint after responsive pleadings have been filed is within the sound discretion of the trial court.  Hester v. Int'l Union of Operating Eng'rs, AFL-CIO, 941 F.2d 1574, 1578 (11th Cir. 1991).  Leave to amend should be freely given when justice so requires. Fed.R.Civ.P. 15(a).  Although generally, the mere passage of time, without more,

---

[2]During oral arguments, appellant's counsel admitted that portions of Rossin's deposition testimony were "mushy."  We do not know why the statements we are dealing with should not enjoy that same distinction.

is an insufficient reason to deny leave to amend a complaint, undue delay may clearly support such a denial.  Id. at 1578-79 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

In Hester, this Court found deficient appellant's claimed breach of a union's duty of fair representation.  The case was then stayed pending the disposition of a writ of certiorari before the United States Supreme Court, and two years later, this Court issued a decision on remand essentially reaffirming its previous finding. Appellant filed a Rule 15(a) motion to amend the deficient claim four and one-half months later.  The district court denied the motion as untimely, and this Court affirmed, determining that appellant had notice of the deficient claim two years earlier and ample opportunity to amend (even though the case was stayed and on appeal for much of that time), but had not acted promptly enough in filing to amend.  941 F.2d at 1578-79.

Similarly, in this case, Pines was aware of the facts upon which its lack-of-notice claim was based early on in the litigation, and had several opportunities to raise the issue.  American Marine's representative testified in deposition on September 26, 2000, four months before American Marine filed its motion for summary judgment, that American Marine was disposing of, and intended to further dispose of, recovered Eurowest collateral through a private third party.

6

Pines was also put on notice of the sale of Eurowest collateral on October 24, 2001, when American Marine claimed in its opposition to Pines' first Rule 60(b) motion that it had liquidated Eurowest collateral.[3]

However, Pines did not argue that it was entitled to relief from judgment based on lack of notice of the sale of collateral until its appeal of the district court's denial of its second Rule 60(b) motion.  This Court rejected that argument because Pines had not raised the issue before the district court.  See Pines Properties v. American Marine Bank, 61 Fed. Appx. 669 (11th Cir. 2003) (Pines II).[4]  In its discussion, this Court also noted that "even if Pines had no opportunity to raise the issue before summary judgment, it certainly could have during the Rule 60(b) proceedings."  Pines II at 7.  Pines filed its first Rule 60(b) motion in September 2001, and its second Rule 60(b) motion (labeled a supplement to its original Rule 60(b) motion) in December 2001.  Therefore, the Rule 60(b)

---

[3]Pines maintains that American Marine's counsel claimed to be uninformed about the disposal of collateral even after it included this information in its opposition.  However, this did not mean that Pines was not informed by American Marine's opposition of the disposal of collateral.

[4]The appeal in Pines II was filed while Pines I was pending before this Court.

7

proceedings began to run seventeen months before Pines filed its motion to amend.[5]

Pines argues that the district court failed to identify how American Marine was prejudiced by the motion to amend. This Court, however, has held that "[p]rejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided." Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999). Here, Pines filed its motion to amend in February 2003. Discovery closed in December 2000, twenty-six months earlier, and American Marine's motion for summary judgment was granted in March 2001, twenty-three months earlier. Furthermore, in Hester, this Court noted that the need for prompt action to amend the complaint was apparent from the district court's entry of scheduling and pretrial orders during the course of the case. 941 F.2d at 1579 n.4. We find no less need to promptly raise, during summary judgment or related Rule 60(b) proceedings, a claim of which a party is aware.

---

[5]There is a certain irony in Pines' argument that it moved to amend only nineteen days after this Court declined in Pines II to address the issue of notice, since that very decision speaks of Pines' failure to present the district court with the notice issue over a year earlier, during the proceedings on the Rule 60(b) motions.

Finally, there is no abuse of discretion in denying an amendment where a party is aware of facts supporting an alternative theory, but delays until after the original theory is rejected before seeking to amend. See Freeman v. Continental Gin Co., 381 F.2d 459, 469 (5th Cir. 1967). Indeed, "[a] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." Id. In this case, Pines waited for over three months after the district court reopened the case on remand in November 2002--until the Pines II disposition of the notice and commercial reasonableness issues--before filing to amend. Pines should have known that it had little chance of success on appeal of its notice claim, since it had not raised that claim in the district court. Therefore, the timing of the motion to amend strongly supports the inference that Pines waited for the disposition of its commercial reasonableness claim before deciding to file.

Given that Pines had numerous and early opportunities to raise the notice issue, yet postponed filing the motion to amend until after discovery closed, dispositive motions were decided, and alternative theories rejected, we find no abuse of discretion in the district court's denial of Pines' motion to amend as untimely.

In its next issue on appeal, Pines contends that the district court abused its discretion in permitting American Marine to call Michael Weisser as a witness for

9

the sole purpose of impeaching him, which Pines argues is prescribed by the construction of Federal Rule of Evidence 607. We need not reach the merits of this issue because Pines did not preserve the issue on appeal.

During trial, American Marine called Weisser to the stand without objection. When American Marine impeached Weisser with questions about his disbarment, Pines objected on relevance grounds. Pines maintains that the relevance objection preserved the Rule 607 issue because the objection contended that the cross-examination was solely for impeachment, and was not otherwise relevant. The objection made at trial, however, was more limited than that. It was: "Objection, Your Honor. Wholly irrelevant. We made these arguments in papers before." R552-20. The relevance objection was thus narrowed to what was contained in the "arguments in papers before."

Pines concedes that the reference to "arguments in paper" refers to the arguments Pines made in its motion in limine. R411. But that motion was based exclusively on Federal Rules of Evidence 402, 403 and 608(b) (a party cannot impeach a witness's credibility with extrinsic evidence). Pines neither referred to Rule 607 in the motion, nor articulated the argument it now makes on appeal. Therefore, Pines' failure to object on the basis of Rule 607 at trial precludes it

10

from raising on appeal the issue of calling Weisser for the purpose of impeaching him.  See Judd v. Rodman, 105 F.3d 1339, 1342 (11th Cir. 1997).

We devote limited time to Pines' remaining issues.  Pines argues that the district court erred in applying Washington's pre-judgment interest rate.  However, Pines did not oppose the request for that rate in American Marine's motion for summary judgment, and did not raise the issue on appeal in Pines I, in which we remanded for trial on limited issues.  This Court has held that "[u]nder the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."  United States v. Escobar-Urrego, 110 F.3d 1556, 1560 (11th Cir. 1997).[6]  Therefore, the district court's application of Washington's prejudgment interest rate will not be disturbed.

Pines argues that the district court erred in confining the trial on remand to the first pledge agreement.  The issues remanded in Pines I were expressly identified to the first pledge agreement.  Regarding the district court's award of

---

[6]Bailey v. Chattem, Inc., 838 F.2d 149 (6th Cir. 1988), cited by Pines, does not persuade this Court otherwise.  In Bailey, the district court had not spoken on the issue of post-judgment interest before the appellant's failure to request that the appellate court amend its initial mandate to provide for post-judgment interest.  Id. at 150-51.

11

costs in connection with the entry of the two prejudgment writs of garnishment, American Marine established a basis for its belief that Pines "w[ould] not have in [its] possession, after execution is issued, tangible or intangible property . . . on which a levy can be made sufficient to satisfy [its] claims," as required by Fla. Stat. Ann. § 77.031(2). Morever, the district court did not abuse its discretion in taxing the $8,183.77 portion of the garnishment bond premium paid by American Marine attributable to time after Pines' posting of the supersedeas bond in Pines I. Pines waived its right to object to the taxation because it did not raise its objection in its original opposition to the motion to tax costs. Finally, since Pines' argument regarding the award of attorney's fees to appellee/garnishee First Miami Securities, Inc. is contingent on a reversal of the underlying judgment, it is no longer pertinent.

AFFIRMED.